# In the
# United States Court of Appeals
## For the Seventh Circuit

Nos. 08-1763 & 08-2159

JENNIFER HO,

*Petitioner/*
*Cross-Respondent,*

and

CHAK MAN FUNG,

*Intervening Petitioner/*
*Cross-Respondent,*

*v.*

SHAUN DONOVAN, Secretary of Housing
and Urban Development,

*Respondent/*
*Cross-Petitioner,*

and

MEKI BRACKEN and DIANA LIN,

*Intervening Respondents.*

Petition for Review and Cross-Petition for Enforcement
of an Order of the Secretary of Housing and Urban Development

ARGUED JUNE 1, 2009—DECIDED JUNE 23, 2009

Before EASTERBROOK, *Chief Judge*, and BAUER and EVANS, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Chak Man Fung owns a condo unit in Chicago's Loop. The unit has been subdivided and rented to three occupants, who share a kitchen and bathroom. Jennifer Ho, one of the occupants, acts as Fung's agent for choosing other renters. When Diana Lin planned to move out before her lease was up, she proposed Meki Bracken as a replacement. As soon as Ho recognized that Bracken is black, however, Ho refused to accept her as a tenant. Ho told Lin: "I don't want to rent to blacks." Lin replied that racial discrimination is illegal, to which Ho responded: "Fine. Sue me." Lin complained to Fung, who refused to allow Bracken to replace Lin as the tenant. Lin nonetheless gave Bracken her key—but, when Bracken tried to move in, Ho barricaded the door. Bracken had to use a hotel while she searched for a place to live. She felt humiliated by the events and was inconvenienced because the place she eventually found was farther from her job. For several weeks Bracken lived with Lin, who felt responsible for Bracken's predicament; this was an uncomfortable arrangement for them both.

Bracken and Lin filed a complaint with the Department of Housing and Urban Development, which administers Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3601–19. HUD investigated, found the complaint substantial, and initiated an administrative proceeding with itself as the charging party. The agency served copies of the charge, and related documents, on Fung and

Ho by both first-class mail and FedEx delivery. Neither Fung nor Ho filed an answer. HUD filed a motion for default, which was served the same way; Fung and Ho did not reply. An administrative law judge granted the motion for default on October 18, 2007. Fung and Ho were served as usual. The ALJ scheduled a hearing on remedies for November 15, 2007; Fung and Ho were notified, for a fourth time, by mail and FedEx.

Fung did not attend the hearing. Ho did appear, without counsel, and asked for a postponement. She told the ALJ that she had left all of the notices unopened for months, believing that they contained legal documents that she did not want to read. Opening them only days before the hearing, Ho said, she realized that she needed a lawyer, but the lawyer she hired had a prior commitment for November 15. When the ALJ denied the motion for a continuance, observing that Ho had only herself to blame for failing to open the many notices, and that a postponement would waste the time of the assembled witnesses (some from out of town), Ho walked out. The ALJ took testimony and invited post-hearing submissions; Bracken, Lin, and HUD filed briefs, while Fung and Ho did not. In an order issued on January 31, 2008, the ALJ found that Fung and Ho had violated 42 U.S.C. §3604 by engaging in racial discrimination and awarded compensatory damages for mental distress and financial injury ($49,284 to Bracken and $25,345 to Lin), a penalty, and prospective relief. This order became final on March 3, 2008, after time for review by the Secretary expired. Ho has filed a *pro se* petition for judicial review. Fung, who is represented by counsel, has intervened. The

Secretary has filed a cross-petition seeking enforcement of the ALJ's order.

Ho maintains that the agency violated the due process clause of the fifth amendment by not providing her with adequate notice of the proceedings and not postponing the hearing. The problem with this argument is that the agency did provide notice, frequently, and by FedEx courier as well as by mail. The Constitution requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objection." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Ho received notices that conveyed all of the salient information and enabled her to protect her interests. The Constitution does not require that an effort to give notice succeed. See, e.g., *Dusenbery v. United States*, 534 U.S. 161 (2002). If it did, then people could evade knowledge, and avoid responsibility for their conduct, by burning notices on receipt—or just leaving them unopened, as Ho did. HUD did not bypass readily available, and superior, alternatives, as in *Jones v. Flowers*, 547 U.S. 220 (2006); even delivery in-hand by a process server does not compel the recipient to read a notice.

Conscious avoidance of information is a form of knowledge. That's the basis of the "ostrich instruction". See *United States v. Ramsey*, 785 F.2d 184 (7th Cir. 1986). Ho behaved like an ostrich. She tells us that she distrusts all governments because the People's Republic of China mistreated her parents. That's an overgeneralization;

after all, Ho chooses to live in this nation (she became a citizen more than ten years ago) in part because governmental practices here differ from those elsewhere. At all events, fear that governments are up to no good is a reason to open notices and act to defend one's interests, not to ignore notices. Ho's brinksmanship did not require the ALJ to delay matters, at the cost of the agency's lawyers and the assembled witnesses. Ho could have had a lawyer's assistance if she had used the time that the notices gave her. Likewise she could have had a translator, had she used the time constructively. (What's more, the ALJ was not obliged to credit her self-serving assertion that she needed a Cantonese translator. Lin testified that Ho speaks English, and Ho's *pro se* brief is written in excellent English.)

The ALJ ordered Ho to pay a civil penalty of $11,000 in addition to compensatory damages. That penalty was the highest then allowed for a first offender. 24 C.F.R. §180.670(b)(3)(iii)(A)(I) (2004 ed.). (No one contends in this court that the regulation conflicts with 42 U.S.C. §3612(g)(3)(A), which appears to set $10,000 as the cap.) The ALJ concluded that the maximum penalty is appropriate because Ho not only set out to discriminate but also was truculent after being told of the conduct's illegality. The ALJ deemed Ho's decision to barricade the door against Bracken an egregious form of discrimination. Still, Ho insists, the penalty was unauthorized because the ALJ did not consider her financial resources, one of the six factors that the agency believes relevant. 24 C.F.R. §180.671(c)(ii). But how was the ALJ supposed to do this when Ho had stalked out of the hearing? A

person who fails to supply information forfeits any complaint that the decisionmaker was uninformed on some issue. Ho bypassed her opportunity to be heard on this and all other subjects.

For his part, Fung did not do even as much as Ho to participate in the administrative process. His main theme in this court is that the agency acted arbitrarily and capriciously by departing from its rules without explanation. An agency must adhere to its policies unless it changes them openly—and after a change the new policy must be applied consistently. An agency that does both A and not-A at the same time is engaged in self-contradiction. Trying to have things both ways is arbitrary. See generally *FCC v. Fox Television Stations, Inc.*, 129 S. Ct. 1800, 1810–12 (2009); Richard J. Pierce, Jr., I *Administrative Law Treatise* §11.5 (2002). As Fung sees things, HUD requires complaint counsel to establish a *prima facie* case of discrimination at the hearing even if the respondent has defaulted. The ALJ in this case did not require such proof, Fung asserts, and so has made an arbitrary decision.

Fung misunderstands how HUD handles defaults. A regulation provides that "[f]ailure to file an answer . . . [to the complaint] shall be deemed an admission of all matters of fact recited therein". 24 C.F.R. §180.420(b). To admit the *facts* alleged in the complaint is not necessarily to admit *liability*. On occasion an ALJ has tossed out a charge for that reason. See, e.g., *HUD v. Wooten*, No. 05-99-0045-8 (HUD ALJ Dec. 3, 2004). The order assigning the proceeding against Ho and Fung to an ALJ stated that

complaint counsel must establish a *prima facie* case of liability. This is the directive that Fung says has been rescinded without explanation. But it was followed: the ALJ concluded that the admitted facts *do* show liability. Fung apparently thinks that a *prima facie* case of liability depends on live testimony. Not at all; admissions are better evidence than testimony, because admissions are incontestable. The ALJ concluded that the admitted facts show Fung's liability. The ALJ then called on complaint counsel to prove damages. Fung calls this another "unexplained departure." If it is a departure from *Wooten* and similar decisions, the difference favors Fung. How can a defaulting party be injured by insistence that damages be proved via testimony and other evidence at a hearing?

We assumed in the preceding paragraph that one ALJ's disagreement with another requires explanation. We doubt, however, that this is so. Explanation is required when *the agency* changes course. "The agency" means the Secretary, and the Secretary has not revised either regulations or practices. It is common for subordinate officials, including ALJs, to have different understandings of rules' meaning. That different ALJs apply §180.420(b) differently does not show that the agency has changed course; it shows only why there is a need for appellate review within any system of adjudication. None of the ALJs is authorized to set or change agency policy; only the Secretary can do that. If ALJs apply the regulations differently, the remedy is an appeal to the Secretary. Fung could have asked the Secretary to step in, but he abjured the entire administrative process and has no legitimate complaint.

Fung does not dispute the ALJ's conclusion that the admitted facts show racial discrimination. Instead he maintains that he is entitled to discriminate by 42 U.S.C. §3603(b)(1), which says that §3604 does not apply to "any single-family house sold or rented by an owner: *Provided*, That such private individual does not own more than three such single-family houses at any one time: . . . *Provided further*, That . . . the sale or rental of any such single-family house shall be excepted . . . only if such house is sold or rented (A) without the use . . . of any real estate broker, agent, or salesman . . . ." Fung claims the benefit of this exemption because, he says, the condo is a single-family dwelling, he does not own more than three single-family dwellings, and Ho did not act as his agent.

Section 3603(b) is captioned "Exemptions", which makes it an affirmative defense. See *United States v. Space Hunters, Inc.*, 429 F.3d 416 (2d Cir. 2005) (holding this for §3603(b)(2)). See generally *Meacham v. Knolls Atomic Power Laboratory*, 128 S. Ct. 2395 (2008). That §3603(b)(1) requires facts outside the pleadings, facts likely in the possession of the respondent rather than the agency, also shows why it is best treated as an affirmative defense. An affirmative defense must be timely asserted—usually in the answer, and certainly at the trial. Fung did not file an answer or participate in the trial, so he forfeited this defense. The ALJ was not obliged to explore this issue without a request by the litigants. And since Fung did not present evidence, he cannot prevail whether or not the forfeiture is conclusive. How do we know that Fung owned three or fewer single-family

houses in 2004, when Bracken was turned away? Assertions in an appellate brief are no substitute for evidence. Fung's claim to the exemption fails anyway, because the condo was not a single-family dwelling. Fung rented it to three unrelated persons; that's not a single family by anyone's definition. Then there is the fact that Ho acted as Fung's agent, something that Fung admitted by failing to answer the complaint, which alleged that an agency relation existed. The ALJ imposed a maximum penalty after concluding that Fung is recalcitrant; this frivolous attempt to invoke §3603(b)(1) vindicates the ALJ's appreciation of Fung's attitude toward his legal obligations.

Neither Ho nor Fung contests the ALJ's calculation of compensatory damages or the terms of the prospective relief. The petition for review therefore is denied, and the cross-petition for enforcement is granted.