**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 22, 2010[*]
Decided December 22, 2010

**Before**

WILLIAM J. BAUER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 10-1668

| | |
|---|---|
| EVE JOLICOEUR-VASSEUR, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northen District of Illinois, Eastern Division. |
| *v.* | No. 08 C 853 |
| ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS and AMERICAN AIRLINES, INC., *Defendants-Appellees*. | Susan E. Cox, *Magistrate Judge*. |

**O R D E R**

American Airlines fired Eve Jolicoeur-Vasseur for failing to pay dues to her union, the Association of Professional Flight Attendants, as required by the collective bargaining agreement. Jolicoeur-Vasseur then sued the union under the Railway Labor Act, *see* 45 U.S.C. §§ 151 to 164, claiming that it breached its duty of fair representation by failing to

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

give notice that her dues were in arrears and then by thwarting her efforts to grieve her termination. She also sued American, but her action against the airline is wholly derivative of her claim against the union, and so we can ignore it here. A magistrate judge, presiding by consent, granted summary judgment to the union. We agree with that court's analysis and affirm the judgment.

Except as noted, the facts are not disputed. Jolicoeur-Vasseur's career with American spanned 16 years. When she was working or on paid leave, the airline automatically deducted union dues from her pay. But she also took a significant amount of unpaid leave, and during those periods, Jolicoeur-Vasseur was obligated to pay the union directly unless she could establish an exemption. She did neither, says the union, and by January 2007 was $600 in arrears. (Jolicoeur-Vasseur disputes the liability but concedes that the union certified with the airline that she owed that amount.) In both April and May 2007 the union mailed her a letter itemizing her unpaid dues but both letters, which were sent via regular mail, certified mail, and FedEx, went undelivered.

Then in June 2007 the union's treasurer, Cathy Lukensmeyer, learned that Jolicoeur-Vasseur would be in Dallas, Texas, that month for training near the union's headquarters. On June 13 she went to the training facility with her colleague, Michael Parker, to notify Jolicoeur-Vasseur in person that she had unpaid dues. The parties dispute the details of that meeting. According to Jolicoeur-Vasseur, Lukensmeyer called her out of a training session, showed her a "multipage document," and asked her to sign the last page. Jolicoeur-Vasseur insists that she couldn't spare the time to read the document, but she acknowledges reading enough to know that it concerned a threat of termination for nonpayment of union dues totaling more than $600. Jolicoeur-Vasseur refused to sign a delivery receipt, and she has equivocated about whether she walked away from the meeting with the document in hand. At first, in a declaration executed in January 2008—after she had hired counsel to negotiate her reinstatement but before she filed this lawsuit—she professed an inability to recall whether Lukensmeyer had let her keep the letter. In a deposition months later, however, Jolicoeur-Vasseur testified that Lukensmeyer did not give her a copy of the letter. Both Lukensmeyer and Parker, by contrast, testified at their depositions that Jolicoeur-Vasseur departed with the three-page letter. The parties do agree that Jolicoeur-Vasseur refused Parker's offer to help her update her address, and that Lukensmeyer gave Jolicoeur-Vasseur a business card and asked her to call to discuss the unpaid dues. Jolicoeur-Vasseur says she called Lukensmeyer several times over the following weeks but never reached her. Lukensmeyer acknowledges missing one call, but says that Jolicoeur-Vasseur did not leave a return number and could not be reached at any of the numbers the union had on file. The two women did not connect until after Jolicoeur-Vasseur was fired.

On July 17, 2007, the union certified to American that Jolicoeur-Vasseur was more than 60 days in arrears on her dues and asked the airline to fire her as required by the collective bargaining agreement. According to Article 31 of the agreement, once the union notifies American that a flight attendant's dues are in arrears, American "shall then take proper steps to discharge such employee from service." The airline began this process on July 25, 2007, when Aprille Gordon, Jolicoeur-Vasseur's direct supervisor, wrote to inform her that, as a consequence of her unpaid dues, she would be fired in 14 days. The letter identified the applicable provision of the collective bargaining agreement and notified Jolicoeur-Vasseur that she could contest the decision by contacting Gordon in writing "within seven (7) days from the date the grievance arises." Gordon mailed the letter to Jolicoeur-Vasseur's permanent address on file, her mother's house, and also sent a copy to her sister. Both letters arrived on July 30. Gordon got these addresses—which differed from the addresses the union had tried—from American's database of contact information for flight attendants. Jolicoeur-Vasseur had updated that database to include her mother's address as recently as October 2006.

Two weeks later, when Jolicoeur-Vasseur completed her shift and cleared customs after an international flight, Gordon met her to collect her badge and keys. Gordon told Jolicoeur-Vasseur that she was being fired because she had failed to pay her union dues. Jolicoeur-Vasseur replied that this was the first she had heard of unpaid dues, and Gordon responded that she and members of the union had been trying to reach Jolicoeur-Vasseur for some time. When Gordon gave Jolicoeur-Vasseur a copy of the termination letter dated July 25, she denied seeing it previously. Jolicoeur-Vasseur then asked where the letter had been sent, and when told she remarked that both addresses were outdated. Jolicoeur-Vasseur was not taking the news well, so Gordon called Lukensmeyer and invited Jolicoeur-Vasseur to speak with her directly. Jolicoeur-Vasseur then told Lukensmeyer that she would pay the dues, but Lukensmeyer said it was too late to pay the money or ask the union to change its decision.

Jolicoeur-Vasseur hired a lawyer and tried without success to get the union to reverse its decision so that American could reinstate her. She then filed this lawsuit. Jolicoeur-Vasseur claimed that the union had breached its duty of fair representation by prompting American to fire her before giving adequate notice of her unpaid dues and then concealing from her that she could grieve her discharge. In granting summary judgment, the magistrate judge concluded that, as far as the undisputed evidence showed, the union had done more than required by the collective bargaining agreement when Lukensmeyer, its treasurer, confronted Jolicoeur-Vasseur in Dallas and personally conveyed that her dues were substantially in arrears. The court reasoned that, even giving her every benefit of the doubt, Jolicoeur-Vasseur conceded that Lukensmeyer had shown her a "multipage document" complete with the amount owed, and that encounter was enough to put her on notice of the union's position. The court also rejected Jolicoeur-Vasseur's contention that

the union concealed the grievance procedures from her, reasoning that both the letter Lukensmeyer brought to Dallas and the termination letter that was delivered to her permanent address informed her of her right to file a grievance.

On appeal Jolicoeur-Vasseur says nothing about the magistrate judge's analysis of the evidence discussed in the order granting summary judgment. Instead, Jolicoeur-Vasseur seeks to undermine the adverse ruling by asserting that the magistrate judge ignored evidence that she had given American an updated mailing address before the airline sent the termination letter to her mother's home on July 25. Our review is de novo. *See Adelman-Reyes v. Saint Xavier Univ.*, 500 F.3d 662, 665 (7th Cir. 2007).

We begin with Jolicoeur-Vasseur's central contentions that the union failed to notify her that it planned to take action based on her dues delinquency and that it failed to inform her of her right to file a grievance after American fired her. The duty of fair representation requires a union to inform an employee of the actions she must take to remedy a dues delinquency before requesting termination on the basis of nonpayment. *See Prod. Workers Union of Chi. & Vicinity, Local 707 v. NLRB*, 161 F.3d 1047, 1052 (7th Cir. 1998); *Larkins v. NLRB*, 596 F.2d 240, 245 (7th Cir. 1979). Jolicoeur-Vasseur argues that the union breached this duty, but the problem with this argument is that the union gave written notice, in-person, at the training in Dallas. And we agree with the magistrate judge that Jolicoeur-Vasseur failed to establish a *material* dispute about the events surrounding that notice. She insisted in her opposition to summary judgment that Lukensmeyer refused to relinquish possession of the letter when the two parted company, and for that reason, Jolicoeur-Vasseur maintains, she did not know what the letter said. But that assertion is refuted by Jolicoeur-Vasseur's declaration and her deposition testimony. In those sworn statements, she acknowledges that she knew Lukensmeyer wanted to speak to her about unpaid dues, that Lukensmeyer handed her a "multipage document," and that she read enough of that letter to know the precise amount the union said she owed and that her job was at risk if she did not pay. The letter also detailed the manner in which the arrearage had been calculated, warned that Jolicoeur-Vasseur would be fired if she did not make payment within 30 days, and pointed her to the procedures for contesting both the amount of unpaid dues owed and her resulting termination. Jolicoeur-Vasseur counters that she couldn't spare the time to read the entire letter because she was eager to return to her training session, but that was her choice, and she has never said that Lukensmeyer refused to let her *read* the letter carefully. Moreover, the union already had sent the same letter to Jolicoeur-Vasseur by certified mail to the addresses it had on file, and the collective bargaining agreement required nothing more. It was not the union's fault if those addresses were out of date. Although Jolicoeur-Vasseur testified that she had given *American* her correct address, it is undisputed that the airline does not generally share contact information with the union, and Jolicoeur-Vasseur presented no evidence to show that her case was an exception to that general rule.

As in the traditional rules for service of process, the notice provided by the union was sufficient because it was reasonably calculated to apprise Jolicoeur-Vasseur—and by her own admission, it did apprise her—that the union was trying to collect her unpaid dues. *See Ho v. Donovan*, 569 F.3d 677, 680 (7th Cir. 2009). Nothing in the collective bargaining agreement required Jolicoeur-Vasseur to read the letter that Lukensmeyer handed her, but the consequences of her failure to do so are of her own making. As we have often repeated, parties "cannot stick their heads in the sand and later claim ignorance," and Jolicoeur-Vasseur's argument premised on precisely this type of behavior is thus without merit. *See Chi. Truck Drivers v. El Paso CGP Co.*, 525 F.3d 591, 600-01 (7th Cir. 2008).

Finally, we turn to Jolicoeur-Vasseur's argument that the union colluded with American so that the airline would send her termination letter to the wrong address. This argument is meritless. Jolicoeur-Vasseur presented no admissible evidence that American sent the letter to an improper address. She listed that address as her permanent address in October 2006. An although she regularly updated her contact information in American's payroll system, she admits that she made no effort to update American's other databases despite an explicit warning in the payroll system that her changes would not carry over. Neither American nor the union is to blame for Jolicoeur-Vasseur's failure to change her address in the database for storing contact information for flight attendants. And even if American had sent the letter to an old address, Jolicoeur-Vasseur has failed to articulate any reason why this error would have been the union's fault given that the union and the airline do not share contact information.

AFFIRMED.