**Dewayne JONES, Appellant–Defendant/Counter–Plaintiff,**

v.

**THE HOUSING AUTHORITY OF THE CITY OF SOUTH BEND, Indiana, Appellee–Plaintiff/Counter–Defendant.**

No. 71A03–0902–CV–84.

Court of Appeals of Indiana.

Oct. 23, 2009.

Rehearing Denied Jan. 13, 2010.

Kent Hull, Indiana Legal Services, Inc., South Bend, IN, Attorney for Appellant.

Joseph Stalmack, Joseph Stalmack & Associates, P.C., Munster, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant/Counter–Plaintiff, Dewayne Jones (Jones), appeals the trial court's judgment in favor of Appellee–Plaintiff/Counter–Defendant, The Housing Authority of the City of South Bend (HASB), finding that HASB did not violate Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131, *et seq.*, or the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*, when HASB evicted Jones from his apartment.

We affirm.

### ISSUES

Jones raises two issues for review, which we restate as follows:

(1) Whether HASB violated Title II of the ADA and the Rehabilitation Act of

1973 when they evicted Jones from his apartment for violating the housekeeping standards in the HASB lease; and

(2) Whether Jones' due process rights were violated when HASB denied Jones a grievance hearing to respond to his eviction notice.

### FACTS AND PROCEDURAL HISTORY[1]

Jones entered into a dwelling lease with HASB on September 14, 2000. As required by the lease, Jones completed a re-certification process each year to maintain his apartment lease with HASB. Jones completed the housing re-certification process for the year 2004. During his tenancy at the HASB unit, Jones failed to meet the housekeeping standards of the HASB lease and was subsequently placed on probation for failing to keep his apartment clean and safe as required by the lease.

On March 24, 2004, HASB personnel responded to a fire alarm in Jones' apartment. The fire was caused by cigarette butts that had burned through a plastic bag catching a chair on fire inside the apartment. When the HASB personnel entered Jones' apartment they found the unit to be dirty, unsanitary, and in a "deplorable" condition. (Plaintiff's Exhibit 2). On the same day as the fire, HASB issued and delivered a written notice to Jones terminating his lease and giving Jones seven days to file a grievance. On April 1, 2004, Jones attempted to file a grievance with HASB, but he was denied. On that same day Jones also attempted to make a rent payment, which HASB refused.

On April 14, 2004, HASB filed its Notice of Claim and Affidavit for Immediate Possession against Jones in the St. Joseph Superior Court Small Claims Division. On

---

**1.** We thank counsel for their thoughtful presentations at oral argument, which was held on September 29, 2009, in the courtroom of the Court of Appeals of Indiana.

April 20, 2004, Jones filed his Verified Jury Demand and Affidavit of Indigence. The cause was then removed to St. Joseph Superior Court. On June 16, 2004, Jones filed an Answer and Counterclaim alleging violation of the ADA and the Rehabilitation Act of 1973, violation of his due process rights under the Fourteenth Amendment of the United States Constitution and Article 1 § 12 of the Constitution of the State of Indiana, breach of contract, and illegality of contract.

On June 30, 2004, HASB filed a second Affidavit for Immediate Possession relative to Jones' failure to pay rent during the pendency of the April 14, 2004, eviction proceeding. Jones filed a request for jury trial and counterclaim in response to the second eviction proceeding. The counterclaims filed in both eviction proceedings were identical, and the causes were consolidated before the trial court.

On June 6, 2005, HASB filed a motion for summary judgment, to which Jones responded on September 16, 2005. On October 6, 2005, the trial court conducted a hearing on HASB's motion, and on March 28, 2005, the trial court issued an order granting in part and denying in part HASB's motion for summary judgment. The trial court concluded the apartment lease was not illegal, and that HASB satisfied all due process requirements. However, the trial court also determined that Jones is a disabled person as defined by the ADA and the Rehabilitation Act of 1973 and denied HASB's motion for summary judgment regarding Jones' claims under the ADA and Rehabilitation Act of 1973.

The parties agreed to waive jury trial and the case was tried to the bench on April 14, 2008. During the trial, Jones identified his physical ailments as being congestive heart failure, hypertension, asthma or lung problems, and diabetes, which led to the amputation of two of his toes on one foot. However, he testified that he was capable of keeping his apartment clean, although he did not do so. He explained when testifying about his ability to clean: "Well basically in a small apartment nothing is real difficult, it's just getting around the cleaning supplies that I have a problem with.... I can't stand the smell of [bleach and ammonia]." (Transcript p. 162). But later, Jones testified that his limitations "sometimes" affect his ability to clean his apartment. (Tr. p. 168). He testified that sometimes he felt as if he could not get out of bed because his "legs don't want to work." (Tr. p. 168). Additionally, his low blood sugar would sometimes incapacitate him for a while. However, he admitted that at the time of the fire, he was not having any difficulty walking. Furthermore, on cross-examination, Jones testified that his apartment was dirty at the time of the fire because he did not know how to clean, not because of any physical problems he had. Jones presented no evidence of any mental handicap which would have impeded his ability to learn how to clean.

On July 8, 2008, the trial court entered Findings of Facts and Conclusions of Law, ruling for HASB on its claim to evict Jones and against Jones on his counterclaims. The trial court found that Jones was physically capable of cleaning his apartment despite his physical impairments, and his failure to keep his apartment clean was not the result of a physical impairment, but due to his lack of knowledge concerning cleanliness. Also, the trial court found that Jones' claim that he disliked the smell of bleach and ammonia was not a disability as defined by the ADA, and Jones was capable of using cleaning agents other than bleach and ammonia to clean his apartment. Lastly, the court found that HASB did not evict Jones based on any

discriminatory intent or perceived disability; therefore, HASB did not violate the ADA or the Rehabilitation Act of 1973.

On August 6, 2008, Jones filed a motion to correct error. Jones' motion to correct error was denied on October 6, 2008.[2] Jones now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. ADA and Rehabilitation Act

The trial court entered Findings of Fact and Conclusions of Law regarding the ADA and Rehabilitation Act of 1973 claims; therefore, we apply a two-tiered standard of review to consider whether the evidence supports the findings and whether the findings support the judgment. *See Weida v. City of West Lafayette, Indiana,* 896 N.E.2d 1218, 1223 (Ind.Ct.App.2008). "The trial court's findings and conclusions will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made." *Id.* at 1223. "We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. We review conclusions of law *de novo.*" *Stares-*

*nick v. Staresnick,* 830 N.E.2d 127, 131 (Ind.Ct.App.2005).

Jones claims that HASB violated both Title II of the American with Disabilities Act of 1990, 42 U.S.C. § 12131 *et seq.,* and the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in or be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). "[A]lthough there are subtle differences between these disability acts, the standards adopted by Title II of the ADA for State and local government services are generally the same as those required under section 504 of federally assisted programs and activities." *Henrietta D. v. Bloomberg,* 331 F.3d 261, 271 (2nd Cir. 2003), *cert. denied,* 541 U.S. 936, 124 S.Ct. 1658, 158 L.Ed.2d 356 (2004).

To establish a *prima facie* claim of discrimination under the Rehabilitation

---

**2.** Jones filed his Notice of Appeal with the trial court on October 31, 2008. On February 24, 2009, Jones filed a copy of his Notice of Appeal, Appellant's Case Summary, and Appellant's Motion for Extension of Time with the Clerk of the Indiana Court of Appeals. On March 9, 2009, HASB filed its Appellee's Objection to Motion for Extension of Time and Motion to Dismiss Appeal due to the fact that Jones' brief was not submitted before the deadline of March 1, 2009. On March 25, 2009 Jones filed his Appellant's Amended Motion for Extension of Time and to File Belated Brief.

On April 15, 2009 Jones filed his Appellant's Brief and Appendix. On April 16, 2009, we issued an Order denying the Appellant's Amended Motion for Extension of Time and To File Belated Brief and granting the Appellee's Motion to Dismiss Appeal. However, on May 13, 2009, Jones filed his Petition for Rehearing, and on May 29, 2009, we issued an Order granting the Appellant's Petition for Rehearing, vacating the April 16, 2009, Order and reinstating Jones' appeal.

Act and Title II of the ADA, Jones must show: (1) he is disabled as defined by the act; (2) he is otherwise qualified for participation or the benefits sought; (3) he has been excluded from participation or benefits solely because of his disability, and (4) that his housing from which he was evicted was provided by a program receiving federal assistance. *See Knapp v. Northwestern Univ.*, 101 F.3d 473, 478 (7th Cir.1996), *cert. denied*, 520 U.S. 1274, 117 S.Ct. 2454, 138 L.Ed.2d 212. In addition, Jones must "show that the discrimination was intentionally directed toward him or her in particular." *Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir.2008), *reh'g and reh'g en banc denied, petition for cert. filed.* There has been no controversy as to whether HASB provides housing pursuant to a program that receives federal assistance. If Jones meets all of these requirements, then the burden shifts to HASB to show that the accommodation provided was either effective, or that the accommodation sought and not provided would have resulted in a fundamental alteration of the procedures or an undue financial or administrative burden. *See id.*

### A. Is Jones Disabled?

 Jones contends that "[t]he trial court erred in not finding or concluding that he was 'an individual with a disability.'" (Appellant's Br. p. 6). However, the trial court explicitly found when ruling on HASB's motion for summary judgment that "Jones is a disabled person as defined by the ADA and the Rehabilitation Act." (Appellee's App. p. 111). HASB has not disputed this prior conclusion by the trial court, and, therefore, Jones is a disabled person.

 To be sure, a person is disabled pursuant to the ADA and Rehabilitation Act if they: (1) have a physical impairment which substantially limits one or more of his major life activities, (2) have a record

of such impairment; or (3) be regarded as having such an impairment. *Knapp*, 101 F.3d at 478 (7th Cir.1996). Although Jones received SSI-disability payments, "determinations made by the Social Security Administration concerning disability are not dispositive findings for claims arising under the ADA." *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 523–24 (7th Cir. 1996). The trial court found that Jones suffered from kidney disease, high blood pressure, incontinence, diabetes, rashes on his legs, and a testicular boil. In addition, Jones presented uncontested testimony that he has congestive heart failure, and has had two toes on one foot amputated due to complications with his diabetes. Courts have held that diabetes constitutes a physical impairment under the Rehabilitation Act of 1973 and the ADA. *See Branham v. Snow*, 392 F.3d 896 (7th Cir.2004) and *Lawson v. CSX Tranp., Inc.*, 245 F.3d 916 (7th Cir.2001). Although Jones has a physical impairment as defined under the ADA and the Rehabilitation Act of 1973, he must still show that the physical impairment limits one or more of his major life activities. *Knapp*, 101 F.3d at 478 (quoting 29 U.S.C. § 706(8)(B)). Breathing and walking are both major life activities. *See* 28 C.F.R. 35.104. Jones' physical impairments affect these activities, and, therefore, Jones is a disabled person as the trial court concluded.

Additionally, it has been held that the ability to care for one self is a major life activity, and that ability encompasses cleaning one's home. *Peters v. Baldwin Union Free Sch. Dist.*, 320 F.3d 164, 168 (2nd Cir.2003). But Jones did not attribute his dirty, unsanitary apartment to his physical impairments.

### b. Is Jones Otherwise Qualified, And Was He Evicted Because of His Disability?

 Under the second prong of an ADA or Rehabilitation Act of 1973 claim Jones

must show that he is otherwise qualified for participation in the HASB housing program, and under the third prong he must demonstrate that he was evicted because of his disability. Because our analysis of each prong is similar and results in the same conclusion, we address both of these prongs together.

■■ "An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap." *Knapp,* 101 F.3d at 482. "An individual may be otherwise qualified in some instances even though he cannot meet all of a program's requirements ... 'this is the case when the refusal to modify an existing program would be unreasonable and thereby discriminatory.'" *Wagner by Wagner v. Fair Acres Geriatric Ctr.,* 49 F.3d 1002, 1009 (3rd Cir.1995).

By specific terms, the lease required Jones to "keep the Dwelling Unit and such other areas as may be assigned to the [him] in a sanitary and safe manner," and "dispose of all ashes, garbage, rubbish and other waste from the Dwelling Unit in a sanitary and safe manner." (Appellant's App. p. 32). Jones repeatedly failed inspections of his apartment due to dirty and unsanitary conditions and was placed on probation for this reason. The termination notice explicitly stated that he was being evicted because his "unit was found in deplorable conditions" when maintenance responded to the fire alarm. (Plaintiff's Exhibit 2). Furthermore, he was found to have "very poor housekeeping practices" and thereby "caused damage[ ] to the unit that is not considered normal wear and tear." (Plaintiff's Exhibit 2).

Despite the fact that Jones provided some inconsistent testimony, Jones explicitly stated that his dirty and unsanitary apartment was not due to his physical problems:

HASB's Attorney: Now, going back to your physical condition, you said you had a problem with your kidneys, you have a problem with your lungs and you have a problem with incontinence, is that correct?

Jones: Yes.

HASB's Attorney: Are those all the physical ailments that you are suffering from at present, including now with your leg situation?

Jones: That's basically it.

HASB's Attorney: And none of those conditions would have kept you from cleaning your apartment, would you agree with me?

Jones: No, none of them kept me from cleaning it.

(Tr. pp. 133–34). Rather, he claimed his apartment was not clean because he did not know how to clean and did not like the smell of bleach and ammonia. Furthermore, Jones admits that he never requested any accommodations from the HASB, and he stated that he did not want the HASB to provide him with any accommodations. Jones' failure to meet his contractual duty to keep his apartment clean has disqualified him from being eligible to live at HASB; therefore, he is not otherwise qualified to live at HASB and was not evicted solely because of his disability.

At oral argument, Jones' counsel expressed his personal view that Jones' testimony that his physical impairments did not keep him from cleaning his apartment came from Jones' unrealistic desire to not be considered handicapped. We sympathize with the possibility that this may be true. However, now that the trial court has weighed the evidence and concluded that the deplorable conditions of Jones' apartment was not due to his physical impairments, we cannot overturn that conclusion unless the evidence does not support the findings and the findings do not

support the judgment. *See Weida*, 896 N.E.2d at 1223. Here, Jones' direct testimony supports the trial court's findings, and the findings support the judgment.

## II. *Due Process*

■ Jones also contends that his due process rights were violated when the HASB refused to conduct a hearing, concluding that he had filed his appeal of his eviction late by one day. 24 C.F.R. § 966.53 requires the following procedural safeguards of public housing entities when terminating a tenancy:

(1) Adequate notice to the tenant of the grounds for terminating the tenancy and for eviction;

(2) Right of the tenant to be represented by counsel;

(3) Opportunity for the tenant to refute the evidence presented by the [Public Housing Authority] including the right to confront and cross-examine witnesses and to present any affirmative legal or equitable defense which the tenant may have;

(4) A decision on the merits.

Jones' has not alleged that the HASB failed to provide any of these enumerated procedural safeguards. Rather, he contends that the manner in which HASB calculated his time to file a grievance appealing his eviction notice to HASB constituted a due process violation.[3]

Jones contends that under the Indiana Trial Rules, his grievance would have been timely filed. *See* Ind. Trial Rule 6(A). In *Lincoln v. Bd. of Com'rs of Tippecanoe County*, 510 N.E.2d 716 (Ind.Ct.App.1987), *abrogated on other grounds by McDillon*

*v. Northern Indiana Pub. Serv. Co.*, 841 N.E.2d 1148 (Ind.2006), we applied Trial Rule 6 where a statute was silent on how to compute time to seek administrative review of an executive decision. We acknowledged that our Trial Rule 6(A) is based upon Rule 6(a) of the Federal Rules of Civil Procedure, which had been applied to administrative appeals as well as federal court proceedings. *Id.* at 722. Therefore, it would be reasonable for Jones to count time similarly to the manner which our supreme court has provided for persons to count time in legal proceedings since there was no other guidance as to how he should calculate the time to file his grievance.

That being said, we fail to see how a remand would provide Jones any relief. "It is commonly understood that procedural due process includes notice and an opportunity· to be heard." *D.L.D. v. L.D.*, 911 N.E.2d 675, 679 (Ind.Ct.App.2009). Notice and opportunity to be heard is precisely what the procedural safeguards of 24 C.F.R. § 966.53 provide. Jones has been provided full opportunity to present defenses to his eviction, first through the trial court, and now before us on appeal. Therefore, we fail to see how any remedy that we provide Jones for HASB's error would provide Jones relief, and Jones has failed to demonstrate how he was prejudiced by the procedural due process error. *See TeWalt v. TeWalt*, 421 N.E.2d 415, 420 (Ind.Ct.App.1981)(applying harmless error doctrine to a claim of deficient notice).

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not error when it

---

**3.** The notice that Jones' lease was to be terminated was dated March 24, 2004, the date of the fire. Jones acknowledges that he received the notice on March 24th, a Wednesday. (Appellant's Br. p. 9). The notice explained that he had a "right to dispute this termination of your Lease by filing a grievance." (Plaintiff's Exhibit 2). Further, the notice explained that if Jones wanted to file a grievance, "you must come into our office within seven (7) days of receipt of the Notice." (Plaintiff's Exhibit 2). Jones attempted to file a grievance on the next Thursday, April 1st. The notice was silent as to how the seven days were to be computed.

concluded that Jones was not evicted due to his disability and that Jones was not prejudiced by HASB's refusal to give him a hearing.

Affirmed.

BAKER, C.J., and FRIEDLANDER, J., concur.