**Sheila PERDUE, et al., Appellants–Plaintiffs,**

v.

**Anne W. MURPHY, in her official capacity as Secretary of the Indiana Family and Social Services Administration, et al., Appellees–Defendants.**

No. 49A02–1003–PL–250.

Court of Appeals of Indiana.

Dec. 3, 2010.

Rehearing Denied Feb. 15, 2011.

---

Gavin M. Rose, ACLU of Indiana, Jacquelyn Bowie Suess, Indianapolis, IN, Attorneys for Appellants.

Gregory F. Zoeller, Attorney General of Indiana, David L. Steiner, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellees.

## OPINION

BAILEY, Judge.

### Case Summary

The ACLU of Indiana ("the ACLU") brought a class action complaint, pursuant to 42 U.S.C. § 1983, to enjoin the practice of the Indiana Family and Social Services Administration ("the FSSA") to issue adverse action notices pertaining to Medicaid, Temporary Assistance to Needy Families ("TANF"), and Supplemental Nutrition Assistance Program ("SNAP") (collectively, "public benefits programs"), which notices generically alleged a failure to cooperate but did not specify which verification document was missing (according to FSSA records). The complaint further alleged that, with respect to SNAP, the FSSA failed to comply with the federally-mandated "refusal to cooperate" standard, instead implementing a "failure to cooperate" standard. With regard to Sheila Perdue, it was alleged that the FSSA violated the Americans with Disabilities Act of 1990 ("the ADA") and the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq., when Perdue was automatically scheduled for a telephonic interview notwithstanding her known hearing impairment and was subsequently denied benefits for "failure to cooperate." Finally, the complaint sought costs and attorney's fees pursuant to 42 U.S.C. § 1988.

Upon cross-motions for summary judgment, the trial court found that, despite the lack of specificity in an adverse action notice in particular, the FSSA procedures (as a whole) satisfied procedural due process requirements and FSSA was entitled to summary judgment in that regard. However, the trial court issued a declaratory judgment and injunction against the FSSA on two bases: that the FSSA had, in violation of federal law governing SNAP, utilized a "failure to cooperate" standard as opposed to a "refusal to cooperate" standard, and had violated Perdue's rights under the ADA and the co-extensive provisions of the Rehabilitation Act.

The certified classes of persons applying for or receiving public benefits ("the Recipients") appeal the denial of relief regarding notification practices; the FSSA cross-appeals, challenging an injunction to the FSSA to comply with federal SNAP regulations and to refrain from terminating Perdue's benefits absent accommodation for her disability. We affirm in part, reverse in part, and remand with instructions to enter summary judgment for the Recipients.[1]

1. We held oral argument in this case on October 7, 2010. We thank counsel for their skillful advocacy.

## Issues

The Recipients present the issue of whether they, as opposed to the FSSA, are entitled to summary judgment because the FSSA notification practices denied them procedural due process. On cross-appeal, the FSSA presents the issue of whether the trial court erroneously granted injunctive relief.

## Facts and Procedural History

The FSSA is responsible for public benefits programs in Indiana. This case arises from the privatization of employee functions traditionally entrusted to the FSSA. Two main changes ensued: the elimination of individually-assigned caseworkers and a drastic reduction of paper records.

In 2006 or 2007, the FSSA entered into a contract with private organizations, including IBM and Affiliated Computer Systems ("ACS"), whereby the contractors would assume responsibility for much of the daily operations of certain welfare programs, including SNAP, Medicaid, and TANF. On March 19, 2007, approximately 70% of FSSA employees became ACS employees.[2] As of May 19, 2008, approximately fifty-nine counties had transitioned into the new system. *See Perdue v. Murphy*, 915 N.E.2d 498, 500 (Ind.Ct.App. 2009).

Concurrent with this "privatization," a "modernization" process was implemented. "Modernization" included changes in the application process to include increased use of computers and the scanning of documents instead of maintaining paper documents. On October 29, 2007, twelve north central Indiana counties were "rolled out" into a "modernized" system. This was followed by an additional twenty-seven counties in western and southeastern Indiana being "rolled out" on March 24, 2008, and an additional twenty counties in southwestern and northeastern Indiana being "rolled out" on May 19, 2008.

For applicants and recipients in the "modernized" counties, there would no longer be an individually-assigned caseworker.[3] Instead, there was a regional service center where certain types of applications might be taken or address changes might be made. In some regions, the service centers included a call center and a document imaging center (where documents sent by applicants or recipients could be scanned and "attached" to the electronic case file).

An individual seeking public benefits in Indiana must be "certified" as eligible and, if deemed eligible, must be "recertified" as eligible either annually or semi-annually (depending upon the particular program). The first step is an interview between a caseworker and a client, which is scheduled by the agency's computer system. The interview may occur in-person or telephonically, with a trend toward telephonic interviewing. In the "modernized" areas of Indiana, clients are simply sent a notice scheduling a telephonic interview. A client who fails to "appear" is sent a notice of missed interview, after which SNAP benefits cease or, with respect to Medicaid and TANF, a notice of adverse action is sent. If the client fails to reschedule with-

---

**2.** The contract has since been rescinded by the Governor of Indiana. A "hybrid system" is now in place.

**3.** The caseworker's responsibilities had included conducting interviews for new applications, processing changes on each client's case, answering questions, and resolving problems. *Perdue v. Murphy*, 915 N.E.2d 498, 500 (Ind.Ct.App.2009). Clients could contact their caseworkers with questions and, typically, each caseworker had access to a hard copy of his or her client's file. *Id.*

in the designated time period, he or she is deemed ineligible for benefits.

Following the initial interview, the client is sent State Form 2032 entitled "Pending Verifications for Applicants/Recipients." Form 2032 includes boxes to be checked regarding the documentation to be provided by the client in the eligibility process (for example, Residence, Shelter, Utility Expense). Clients are advised to place their Social Security numbers on each document. An agency employee scans each document received, classifying it by using printed barcodes or other identifying characteristics, such as a case number or Social Security number. It is estimated that 1.2% of the total documents received remain "un-indexed."

When an adverse decision is made with respect to certification or recertification, the agency assigns a three-digit reason code. These have included such reasons as failure to cooperate in establishing eligibility, failure to cooperate in verifying income, failure to cooperate in verifying the value of resources, failure to verify Indiana residency, failure to cooperate in verifying assistance group composition, and failure to submit medical information. Depending upon the benefit program, other reasons may apply, such as failure to complete a personal interview and failure to return a signed redetermination form.[4]

An individual who has received an adverse decision with respect to benefits receives a denial letter which may state:

Dear [Client],

Your application for [Program Name] dated _____ has been denied.

You are not eligible because:

FAILURE TO COOPERATE IN ESTABLISHING ELIGIBILITY

(Ex. 8, App.265.) The notices do not necessarily specify which information remains unverified or which document is missing.

On March 26, 2008, the instant Verified Class Action Complaint for Declaratory and Injunctive Relief was filed by the ACLU. The first amended complaint was filed on May 16, 2008. The parties stipulated to certain classes. Class A (represented by all plaintiffs) is defined as:

Any and all individuals, families, and/or households in Indiana who are denied from or will be denied from, or have been terminated from or will be terminated from the Medicaid program, the Food Stamp program, and/or the TANF program because the Indiana Family and Social Services Administration has determined or will determine that the individual, family, and/or household should be denied from and/or terminated from the Medicaid program, the Food Stamp program, and/or the TANF program for any of [certain] reasons.

Sub-class A consists of only those members of Class A who were denied from or will be denied from, or have been terminated from or will be terminated from, the Medicaid program. Class C consists of individuals who are denied or terminated from the SNAP program. It is represented by Kenneth Zachary. The certification of Class B was contested, the trial court denied certification, the decision was affirmed on appeal, on remand the plaintiffs withdrew the request, and ultimately, the disability discrimination claim proceeded to judgment on behalf of Perdue individually.

4. A post-hearing "Declaration" by FSSA Deputy Director Rich Adams indicates that the "failure to cooperate" denial code has now been abandoned. (App.554.) At oral argument, counsel for FSSA re-iterated the voluntary abandonment of that particular code, but admitted that the FSSA had made no formal agreement to refrain from its use in the future.

After cross-motions for summary judgment, the trial court issued its Findings of Fact, Conclusions of Law, and Judgment on March 1, 2009, entering summary judgment in favor of FSSA on the claims raised by Class A and Sub-class A and entering judgments for injunctive and declaratory relief in favor of the plaintiffs of Class C and in favor of Perdue (upon her individual disability discrimination claim). In relevant part, the order provided:

> Because the clients are given very specific notice *of what is needed to establish eligibility* for the agency's welfare programs, the agency's eligibility determination process, as a whole, is adequate and "reasonably calculated ... to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The notice that all applicants of welfare benefits are provided in this case is sufficient under the Constitution.

(Tr. 29.) (emphasis added.)

> [U]nder federal law, "no household shall be eligible to participate in the food stamp program if it *refuses* to cooperate in providing information to the State agency that is necessary for making a determination of its eligibility or for completing any subsequent review of its eligibility." 7 U.S.C. § 2015(c) ....
> There exists a substantive difference between "failure to cooperate" and "refusal to cooperate," as the plain language of the terms indicates.

(App.30.)

> A declaratory judgment is entered on behalf of Class C pursuant to Rule 57 of the Indiana Rules of Trial Procedure as follows:
> It is declared that the defendants' practice or policy whereby Food Stamp applicants and recipients who have their benefits terminated, denied, or discontinued because they are alleged to have "failed to cooperate" with the defendants violates federal Food Stamp law (7 U.S.C. § 2015(c); 7 C.F.R. 273.2(d)).
> The defendants are hereby permanently enjoined from terminating, denying, or discontinuing the Food Stamp applications or benefits of the members of Class C based on an alleged "failure to cooperate" with the agency.

(App.37–38.)

> A declaratory judgment is entered on behalf of Sheila Perdue pursuant to Rule 57 of the Indiana Rules of Trial Procedure as follows:
> It is declared that the defendants' denial of assistance of Sheila Perdue because she is alleged to have "failed to cooperate" with the defendants violates the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101, et seq.) and the Rehabilitation Act of 1973 (29 U.S.C. § 794, et seq.).
> The defendants are hereby permanently enjoined from terminating, denying, or discontinuing the Medicaid, Food Stamp, and TANF applications or benefits of Sheila Perdue based on an alleged "failure to cooperate" with the agency unless and until the agency provides them [sic] with a caseworker or case management services adequate to ensure that their [sic] individual disabilities are accommodated by the agency.

(App.38.) This appeal ensued.

## Discussion and Decision

### *Standard of Review*

We review a grant of summary judgment to determine whether there are genuine issues of material fact, and whether the moving party is entitled to judgment as a matter of law. *Yates v. Johnson*

*County Bd. of Comm'rs,* 888 N.E.2d 842, 846 (Ind.Ct.App.2008). We must construe all evidence in favor of the party opposing summary judgment, and all doubts as to the existence of a material issue must be resolved against the moving party. *Id.* at 847. We carefully review a grant of summary judgment in order to ensure that a party was not improperly denied his or her day in court. *Reeder v. Harper,* 788 N.E.2d 1236, 1240 (Ind.2003). The fact that the parties made cross motions for summary judgment does not alter this standard of review. *Decker v. Zengler,* 883 N.E.2d 839, 842 (Ind.Ct.App.2008), *trans. denied.* Here, the parties have agreed that the trial court could appropriately rule upon the request for injunctive relief in the context of summary judgment proceedings, implicitly agreeing that there are no material factual disputes requiring an evidentiary hearing.

### I. *Procedural Due Process—Content of Adverse Action Letters*

■ The Recipients contend that, when there is an applicant or recipient failure to provide one or more eligibility documents to the FSSA, it is incumbent upon the FSSA to provide a notice that specifically identifies what eligibility document(s) is (are) missing. They challenge the use of generic "failure to cooperate" language as constitutionally inadequate. Also, the Recipients identify four situations which might give rise to an erroneous determination of "failure to cooperate" because of missing documents:

1. The recipient might timely and properly return documents to the agency that, for some reason, the agency has no record of receiving;

2. The agency might request documents that it had no legal right to request;

3. The recipient may return documents that provide the same information as requested documents but are nonetheless deemed unsatisfactory by the agency; or

4. The agency may inadvertently fail to properly request needed documents.

Appellant's Brief at 22–23.

■ "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth our Fourteenth Amendment." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Procedural due process requires "timely and adequate notice detailing the reasons for a proposed termination" of welfare benefits. *Goldberg v. Kelly,* 397 U.S. 254, 267–68, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).[5] Whether a notice complied with due process presents a question of constitutional law, which we review de novo. *See id.* at 261–62, 90 S.Ct. 1011.

*Goldberg* does not specify what information a written notice must provide to satisfy due process; thus, courts must determine what detail is required. *Goldberg* invoked a balancing test involving a determination of the precise nature of the government function as well as of the private interest that has been affected by govern-

---

**5.** In *Goldberg,* "notice" amounted to a letter from the agency and a personal meeting with a caseworker. The combination was adequate to inform the recipient of the legal and factual bases for the agency's position. 397 U.S. at 268, 90 S.Ct. 1011. Federal Medicaid law requires that a state's program comply with the due process standards as set forth in

*Goldberg. See* 42 C.F.R. § 431.205(d). The claims of Class A (arising under the Fourteenth Amendment to the United States Constitution) and the claims of Sub-class A (arising under federal Medicaid law) are thus coextensive with one another and were treated simultaneously by the parties and the trial court.

mental action. *Id.* at 263, 90 S.Ct. 1011 (citing *Cafeteria & Restaurant Workers Union, etc. v. McElroy*, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961)). The Court found "the interest of the eligible recipient in uninterrupted receipt of public assistance, coupled with the State's interest that his payments not be erroneously terminated, clearly outweighs the State's competing concern to prevent any increase in its fiscal and administrative burdens." *Id.* at 266, 90 S.Ct. 1011. The *Goldberg* Court went on to adopt the reasoning of the District Court that, "the stakes are simply too high for the welfare recipient, and the possibility for honest error or irritable misjudgment too great, to allow termination of aid without giving the recipient a chance, if he so desires, to be fully informed of the case against him so that he may contest its basis and produce evidence in rebuttal." *Id.*[6]

The Recipients have argued that a notice of adverse action letter must independently notify a recipient of the specific omission in order to meet fundamental due process requirements. The FSSA has taken the approach that all notification documents inherent in the eligibility process may be aggregated, and the trial court agreed.

The trial court did not specifically find that the challenged adverse action notices afforded the Recipients procedural due process. Rather, the trial court found that the Recipients had been afforded a "multi-step process for eligibility determinations, the totality of which fully satisfies due process requirements." (App.29.) The trial court observed that the process included: "an initial interview, verbal instructions for what is needed to establish eligibility, written notice of what is needed to establish eligibility (the Form 2032), the availability of a toll free 1–800 number for assistance, the submission of the materials by the client, evaluation of the submitted materials, and, if the materials submitted by the client are inadequate to establish eligibility, a notice of adverse action describing what information was insufficient and what is still needed to establish eligibility." (App.29.)

However, this does not accurately reflect the designated record. The adverse action letters in the designated materials do not "describe what information was insufficient and what is still needed to establish eligibility." At best, the applicant has a category of omission identified in the letter. It appears that the applicant is apprised of what to provide and then, upon receipt of an adverse action notice, is expected to determine which item or items are missing or presumed missing based on the recipient's understanding of past instructions. Also, while the trial court's order might suggest otherwise, the advisement that questions may be answered during certain hours via the operation of a toll-free number appears on forms for eligibility determination, as opposed to adverse action no-

---

6. *See also Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), observing that "due process is flexible and calls for such procedural protections as the particular situation demands" and, accordingly, "resolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected." "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

tices.[7]

The Recipients further argue that the trial court's decision "assumed the infallibility of the State's eligibility determination process." Appellant's Brief at 22. The FSSA correctly observes that no court has found that the particular "kind of system used by Indiana" denies "fundamental notions of procedural due process." Appellee's Brief at 13. Accordingly, the Recipients have identified other allegedly analogous situations.

In *Driver v. Housing Authority of Racine County*, 289 Wis.2d 727, 713 N.W.2d 670 (2006), the court found that public housing notices that advised tenants they had "violated a family obligation under Section 8" were constitutionally defective and thus invalid. The court noted: "Both the initial notices and the ultimate decisions, essentially form letters, fell woefully short of the level of specificity that due process requires. Nowhere did these documents specify *who* had violated *what* specific obligation and *when* the violation occurred, and neither gave even a rudimentary description of the incidents giving rise to the charges." *Id.* at 673 (emphasis in original).

In *Baker v. Dep't of Health and Social Services*, 191 P.3d 1005 (Alaska 2008), recipients of Medicaid-provided home care services brought a class action suit to challenge the sufficiency of notices sent from the Department of Health and Human Services indicating that services would be terminated or reduced. At the outset, the Court "reject[ed] the suggestion that 'notice' here can be broadly construed to include not only the written letter, but also

'information the recipients already had about the assessment process and the information the recipients already had about themselves.'" *Id.* at 1009. The Court indicated its agreement with "diverse authorities holding that although an agency may have latitude to provide notice by a variety of media under *Goldberg*, the agency must actively provide 'complete' notice" and further observed that the burden of acquiring notice may not be placed upon the recipient, as due process requires the agency to supply it. *Id.* at 1010. The Court held "that the department cannot presume that recipients already have a basis for understanding why services are being reduced; whatever information the department is required to provide must be part of the written notice itself." *Id.*[8]

In *Vargas v. Trainor*, 508 F.2d 485 (7th Cir.1974), the agency argued that its notice was sufficient because it invited the recipient to seek additional information. However, the Court rejected this argument, stating that the notice recipient "would be unable or disinclined, because of physical handicaps and, in the case of the aged, mental handicaps as well, to take the necessary affirmative action." *Id.* at 489. The Court expressed concern that many agency mistakes would stand uncorrected. *Id.* at 490.

The FSSA relies upon *Rosen v. Goetz*, 410 F.3d 919, 931 (6th Cir.2005) (holding that due process does not specifically require "notice to come in just one letter, as opposed to two"). *See also Ho v. Donovan*, 569 F.3d 677, 680 (7th Cir.2009) (finding notice to be adequate if it conveys all of the salient information and enables the

---

7. FSSA's brief, at page 10, asserts that "forms utilized by the agency for *eligibility determination* contain the following language: 'If you have questions, contact FSSA at 1–800–403–0864 Monday through Friday 7:00 AM–7:00 PM'" (emphasis added.)

8. Because Medicaid services were involved, the applicable regulation defined "notice" as a "written statement that meets the requirements of § 431.210."

person to protect his or her interests and observing that "the Constitution does not require that an effort to give notice succeed").

The FSSA also points to the availability of an administrative appeal. It contends that no agency can be expected to operate with infallibility, and the remedy of administrative appeal exists precisely to address error in administrative proceedings. The Recipients respond that the appellate process is meaningless if they are not informed as to the specific nature of missing documentation; in other words, they cannot defend on grounds that they supplied X document as opposed to Y document if the omission is not identified.[9]

We are persuaded by the Recipients' argument that they may not effectively exercise a right to be heard on appeal absent sufficient information to adequately prepare for and pursue the appeal. Mindful that an individual receiving an FSSA adverse action notice likely has a physical, mental, or economic disadvantage (or combination thereof), it is unreasonable to expect that the recipient can act to protect his or her interests without specific information. The recipient who has received a generic-code letter theoretically has the same right of appeal as does the person who has received a more detailed letter, but is at a distinct disadvantage in preparing for an appeal. Regardless of the particular document of concern to the FSSA caseworker in reaching the decision that the recipient was uncooperative, he or she is forced to be prepared to demonstrate on appeal that each and every document was timely provided. This places a great burden upon the disadvantaged individual.

On the other hand, while the fiscal responsibility interest of the State is a factor to be considered, *Mathews,* 424 U.S. at 348, 96 S.Ct. 893, we can discern no great burden upon the FSSA to identify the specific reason for its denial decision. Indeed, at oral argument, the FSSA was not able to articulate a reason why the caseworker could not readily identify the particular omission that caused the caseworker to reach the conclusion of lack of cooperation. More importantly, even if a task is burdensome, it may not be avoided when its completion is a component of due process. *See Goldberg,* 397 U.S. at 270, 90 S.Ct. 1011 (observing that "evidence used to prove the Government's case" must "be disclosed to the [welfare applicant] so that he has an opportunity to show that it is untrue").

The Recipients had due process rights, at a minimum including the right to notice and an opportunity to be heard. However, Recipients were routinely given non-specific notice of adverse decisions, hampering their right to be heard on appeal. Moreover, the provision of a telephone number as part of the advice of right to appeal essentially provided a mechanism whereby the individual could seek more specific notice, that which should already have been provided. Accordingly, procedural due process was not afforded the Recipients. The Recipients demonstrated their entitlement to injunctive relief; the grant of summary judgment in favor of the FSSA is reversed.

## II. *Injunctive Relief*

■ Order Pertaining to SNAP. The FSSA, upon cross-appeal, raises the issue

---

9. As a practical matter, a recipient who has carefully maintained copies of all submitted documents (together with proof of submission) may prevail on appeal by showing that he or she has timely produced each of the documents requested. Essentially, the modernized FSSA procedure lightens or obviates the FSSA's burden to maintain hard copies of documents while placing the burden on the recipient to maintain all records of his or her correspondence with FSSA.

of whether the trial court erroneously granted a declaratory judgment and injunctive relief to the plaintiffs with regard to SNAP, alleging (1) that the designated record does not establish that an incorrect standard was utilized by the FSSA and (2) that the declaratory relief order is overbroad. The FSSA also challenges the order in favor of Perdue, alleging that the designated materials do not establish that her rights under the ADA were violated.

In the summary judgment order, the trial court observed that neither party had argued any disputed issue of fact. The trial court essentially ordered the FSSA to follow the law—to apply a "refusal to cooperate" standard as opposed to a "failure to cooperate" standard. The FSSA does not dispute that this is the law, and has even submitted a post-hearing "Declaration" indicating that it follows the law. Even so, the FSSA claims that summary judgment was improper because the properly designated materials did not establish a violation. The FSSA seeks to disregard factual allegations of the complaint as self-serving and not corroborated. Nonetheless, the exhibits of FSSA form letters include the "failure to cooperate" language.

As for the allegedly overbroad injunctive relief, the FSSA contends that the trial court enjoined the FSSA from denying SNAP benefits even when applicants refused to cooperate. The FSSA argues that the injunction must be set aside "because it is not tailored to the actual findings and conclusions made by the trial judge on the food stamp issue." Appellee's Brief at 33. Certain of the findings addressed a lack of notice required by 7 C.F.R. § 273.2(c)(5) (informing the household of the agency's responsibility to assist the household in obtaining required verification). The finding is superfluous; the order for injunctive relief did not mirror this "notice" language in directing the

FSSA to follow the law. The FSSA argues:

> [R]ather than broadly prohibiting the agency from denying applicants for refusals to cooperate with the agency as was actually done in the injunction, the trial court simply should have required the FSSA to give the notice required by 7 C.F.R. § 273.2(c)(5) before it denied food stamp applications for a failure to cooperate with the agency.

Appellee's Brief at 34. This is a perplexing argument. It assumes (incorrectly) that the trial court's injunction prohibited denial for "refusal to cooperate" and assumes (incorrectly) that the FSSA could properly deny SNAP applications upon mere "failure to cooperate." The FSSA has not demonstrated that the injunction is overbroad. Nor has it identified a genuine issue of material fact precluding summary judgment.

◼ *Sheila Perdue.* On prior appeal from the denial of certification, the factual allegations relative to Perdue's claim were stated as follows:

> The following facts are alleged in Perdue's complaint. Perdue is an adult resident of Madison County. Perdue suffers from nerve damage in both of her ears, for which she has been prescribed hearing aids; arthritis in both of her hips; emphysema; routine migraine headaches; chronic obstructive pulmonary disease; severe depression; and bipolar disorder. Perdue has difficulty understanding her surroundings. She has difficulty hearing, seeing, reading, and comprehending what people tell her or what she receives in writing.
>
> In December 2007, Perdue was enrolled in both the Food Stamp and Medicaid for the Disabled programs and had been for three or four years. In December 2007, Perdue received notice from the FSSA indicating that she was required to be certified for these programs

and that she was required to participate in a telephonic interview. During this telephonic interview, Perdue had difficulty hearing what the interviewer was saying over the telephone. Perdue allegedly asked to schedule an in-person interview but was told she could not. Perdue understood from her interview that she was required to provide the FSSA with certain documents for purposes of demonstrating her eligibility for these programs. Perdue traveled to the FSSA Help Center in Anderson and requested assistance in preparing the documents but was refused assistance. Perdue submitted certain documents in an attempt to comply with the FSSA's requirements.

In January of 2008, Perdue received a letter from the FSSA indicating that her application for Food Stamps had been denied. The stated reasons for this denial of eligibility were (1) Failure to Return a Signed Redetermination Form and (2) Receipt of or Increase in Unearned Income. In addition, this letter indicated that Perdue's Medicaid benefits would be discontinued for the stated reasons of (1) Failure to Cooperate in Establishing Eligibility and (2) Failure to Cooperate in Verifying Income. Perdue was unaware how she had failed to comply with FSSA documentation requirements. Perdue did not appeal her denial of benefits. At no time did an FSSA employee contact Perdue to assist her in completing the required documentation or explain which documents had not been received. Since February 29, 2008, Perdue has been assigned an authorized representative to assist her in applying to the Medicaid program. According to Perdue, this representative is not always available to assist her and frequently does not do so.

*Perdue,* 915 N.E.2d at 501–02.

Perdue claimed that FSSA violated Title II of the ADA and also the Rehabilitation Act of 1973. The ADA provides in relevant part that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in or be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). There are subtle differences between the disability acts, but generally the standards are the same. *Jones v. Housing Authority of South Bend,* 915 N.E.2d 490, 494 (Ind.Ct.App.2009), *trans. denied.*

Perdue's claim of discrimination under the acts required her to establish: she is disabled; she is otherwise qualified for the benefits sought; she was excluded from participation or benefits because of her disability, and the entity denying her benefits received federal assistance. *See id.* at 495. A person is disabled pursuant to the ADA and the Rehabilitation Act if she (1) has a physical impairment which substantially limits one or more of her major life activities; (2) has a record of such impairment; or (3) may be regarded as having such an impairment. *Id.*

The FSSA argues that the record of designated materials does not establish Perdue's entitlement to summary judgment, claiming: "there is absolutely no evidentiary support for the trial court's findings that Perdue is deaf or that her disability was known to the agency for years and that no assistance or accommodation was provided to her." Appellee's

Brief at 38. The FSSA also claims that Perdue (a long-standing recipient of benefits) did not demonstrate her entitlement to the benefits sought. Although the FSSA acknowledges that Perdue was a benefits recipient (and a party to prior litigation with the FSSA) and thus the FSSA necessarily possessed information regarding her circumstances, the FSSA—somewhat ironically—asserts that it was entitled to specific notification by designation of materials.

The trial court ordered the FSSA to refrain from terminating Perdue's benefits absent the provision of accommodation for her disability. Again, the FSSA was essentially ordered to follow the law, in this instance the ADA. Perdue is not seeking a damages award. It is unclear how the FSSA has suffered harm, but for the specter of attorney's fees. At oral argument, the FSSA conceded that it was not demonstrably harmed by injunctive orders that amounted to orders to follow existing law.

Pursuant to Indiana Trial Rule 61,

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order in anything done or omitted by the court or by any of the parties is ground for granting relief under a motion to correct errors or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order or for reversal on appeal, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Here, we do not disturb the order of the trial court with regard to compliance with SNAP and the ADA. We find the trial court order not inconsistent with substantial justice.

### Conclusion

Adverse action notices lacking specificity as to missing or allegedly missing eligibility documents do not comport with the requirement of procedural due process. Accordingly, the Recipients established their entitlement to injunctive relief and summary judgment in favor of the FSSA is reversed. The FSSA has demonstrated no substantial harm from an injunction to refrain from denying or terminating public welfare benefits in contravention of federal law.

Affirmed in part, reversed in part, and remanded with instructions to enter summary judgment for the Recipients.

RILEY, J., and KIRSCH, J., concur.