# FOR PUBLICATION



FILED
May 21 2012, 9:11 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**ROBERT W. HAMMERLE**
Indianapolis, Indiana

**JOSEPH M. CLEARY**
Collignon & Dietrick
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELIZABETH ROGERS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DANTE ADAMS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 15A01-1110-MI-537 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DEARBORN CIRCUIT COURT
The Honorable James D. Humphrey, Judge
Cause No. 15C01-1106-MI-29

**May 21, 2012**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Dante Adams appeals the trial court's order transferring $25,000 in cash seized from Adams to federal authorities. Adams raises a single issue for our review, namely, whether the trial court properly ordered the State to transfer the money to federal authorities. We affirm.

## FACTS AND PROCEDURAL HISTORY

On June 18, 2011, Adams visited the Hollywood Casino in Lawrenceburg. There, he sought to exchange 969 $20 bills, 52 $10 bills, and 20 $5 bills for 200 $100 bills (an exchange of $20,000). During the attempted exchange, Adams became argumentative with the teller. He then proffered an Arizona driver's license when signing his taxpayer ID form, though he had told the teller his address was in Indianapolis.

Curiosity sparked, agents of the Indiana Gaming Commission approached Adams and questioned his identity. The agents ran a warrant check and discovered that the State of Texas had issued a parole warrant for Adams. The agents then took Adams into custody and informed the Lawrenceburg Police Department.

Shortly thereafter, Lawrenceburg Police Officer Jacob Jump arrived at the casino with a K-9 unit named "Newby." Appellant's Br. at 3. While being escorted out of the casino, Adams requested that his car keys be given to a friend inside the casino. Adams then became argumentative with Officer Jump and the gaming agents over which car was his. Adams' attitude "regarding such a trivial question raised suspicion regarding the contents of the car." Appellant's App. at 17. As such, upon finally identifying Adams'

2

car Officer Jump had Newby do a sniff search of the vehicle. Newby gave a positive response that narcotics were or had recently been present inside Adams' vehicle.

Officer Jump had Adams' car towed to the Lawrenceburg Police Department while he obtained a search warrant for the car. After he received the warrant, Officer Jump searched the car and seized $5,000 in cash, which had been placed inside a "Cheesecake Factory" sack in the trunk. Officer Jump also discovered a prepaid cell phone, a prepaid "boost" phone, two suitcases, two bags of snack foods, and a case of bottled water. Id. at 11. Based on his training and experience, Officer Jump knew that "subjects who possess and/or traffic in narcotics will have one or more prepaid cell phones along with snacks/food and luggage inside the vehicle," to say nothing of the $5,000 in cash. Id. Officer Jump had Newby separately sniff the cash inside the Cheesecake Factory sack, and Newby gave another positive response.

On June 28, the State filed a motion for transfer of property in the trial court. The State did not serve a copy of its motion on Adams. In its motion, the State asked the trial court to transfer the seized $25,000 to the United States Drug Enforcement Administration ("DEA") "for the purpose of commencement of forfeiture proceedings."[1] Id. at 7. The trial court granted the State's motion on the same day. Thereafter, Adams,

---

[1] As Judge Hamilton has noted for the United States District Court for the Southern District of Indiana:

> When . . . officers seize more than $10,000 in U.S. currency, they have the option to take the money either to an Indiana county prosecutor or to one of several federal agencies. . . . Under federal forfeiture proceedings, [the Indiana State Police] would receive eighty percent of the seized funds. In a state forfeiture proceeding, by contrast, ISP would be reimbursed for its expenditures, but the remainder of the money would be distributed among the county prosecutor's office, a teacher's [sic] fund, and other State entities.

Martin v. Ind. State Police, 537 F. Supp. 2d 974, 977 (S.D. Ind. 2008) (footnote and citations omitted).

by counsel, filed a motion to set aside the transfer order. The court held a hearing on Adams' motion on August 26 and denied his motion on September 26. This appeal ensued.

## DISCUSSION AND DECISION

We first address the State's contention that "this appeal should be dismissed" because "[t]here is no discretion by the trial court to deny a motion [to transfer] made by a prosecutor." Appellee's Br. at 4. Rather, the State continues, the relevant statutory language invokes the mandatory term "shall" when instructing the trial court to order a transfer of property upon the motion of the prosecutor. Id.

The State's argument for dismissal is perplexing. As our supreme court recently stated:

> The statute authorizing the turnover of seized property provides:
>
>> Upon motion of the prosecuting attorney, the court shall order property seized under IC 34-24-1 transferred, subject to the perfected liens or other security interests of any person in the property, to the appropriate federal authority for disposition under 18 U.S.C. 981(e), 19 U.S.C. 1616a, or 21 U.S.C. 881(e) and any related regulations adopted by the United States Department of Justice.
>
> Ind. Code § 35-33-5-5(j) (2004). The State argues that the language of the turnover statute is mandatory in that "the court shall" order the transfer of property to federal authorities. [The appellant] responds that the statute by its terms applies only if the property has been "seized under Indiana code chapter 34-24-1." Indiana Code section 34-24-1-2(a) provides:
>
>> Property may be seized under this chapter by a law enforcement officer only if:
>>
>> (1) the seizure is incident to a lawful:
>>     (A) arrest;
>>     (B) search; or

4

(C) administrative inspection[.]

> We agree with the trial court and the Court of Appeals that if the search or seizure of [the appellant's] property was unlawful, the turnover order must be reversed. The statute contemplates a lawful search, and the purpose of the exclusionary rule would be thwarted if law enforcement could conduct unlawful intrusions into citizens' privacy and still use the evidence by turning it over to another jurisdiction.

Membres v. State, 889 N.E.2d 265, 268-69 (Ind. 2008) (second alteration original).[2]

Accordingly, the propriety of a transfer order under Indiana Code Section 35-33-5-5(j) is dependent on the lawfulness of the search that led to the State obtaining the property in question. And the defendant has the right to challenge the lawfulness of the search prior to the court's granting of a motion to transfer, as demonstrated in Membres. Thus, we will not dismiss this appeal but will instead consider the merits of Adams' claims.

On the merits, we first address Adams' contention that he was entitled to notice of the State's motion to transfer. Specifically, Adams claims that his lack of notice of the motion violated Indiana Code Sections 34-24-1-3 and -4, which expressly require adherence to the Indiana Rules of Trial Procedure before a prosecutor finally disposes of seized property. On this specific question, we agree with the State's response that Adams has confused our forfeiture statutes with the turnover statute. We are not (yet) concerned with the forfeiture of the $25,000 and, therefore, Adams' argument is misplaced.

That said, we are also not persuaded by the State's argument that Adams was not entitled to notice of its motion. In support of its position that notice was not required, the State recognizes that the turnover statute merely instructs the court, upon a prosecutor's

---

[2] We note that both of Adams' attorneys were the attorneys of record in Membres, yet that controlling authority is not cited in any of the briefs on appeal.

request to transfer lawfully seized property, to order the transfer. See I.C. § 35-33-5-5(j). As stated by the United States District Court for the Southern District of Indiana, the "law does not provide for such notice and hearing before the transfer. The state statutes . . . simply require the state court to grant such motions . . . ." United States v. $75,863.50 U.S. Currency, 2009 WL 1951800 at *2 (S.D. Ind. 2009) (emphasis original). The district court has further concluded that a state court's transfer order "merely change[s] the forum and . . . federal forfeiture proceedings [will] provide ample procedural protections before there [is] any final deprivation of the claimed property." Id. at *3 (discussing Martin v. Ind. State Police, 537 F. Supp. 2d 974, 987-89 (S.D. Ind. 2008)).

Nevertheless, in Membres our supreme court held that the turnover statute "contemplates a lawful search" and, if the underlying search or seizure is unlawful, "the turnover order must be reversed." 889 N.E.2d at 269. Thus, the lawfulness of a search underlying a transfer request is a legitimate question for a defendant to raise before the transfer occurs. Such a challenge requires the State to first give the defendant notice of the transfer request. To permit otherwise would "thwart[]" the statutory protection against the transfer of unlawfully obtained property. Id.

This conclusion is also required by our trial rules. As Rule 1 of our Rules of Trial Procedure states, "[e]xcept as otherwise provided, these rules govern the procedure and practice in all courts of the state of Indiana in all suits of a civil nature . . . ." And Rule 5(A)(3) requires "each party . . . [to] be served with . . . every written motion except one which may be heard ex parte." The State rightly does not suggest that the circumstances underlying its motion to transfer are within the "very few and rare" circumstances in

6

which the law would permit a "disfavor[ed] . . . ex parte court action without notice." Indianapolis Mach. Co. v. Curd, 247 Ind. 657, 666, 221 N.E.2d 340, 346 (Ind. 1966); see, e.g., TeWalt v. TeWalt, 421 N.E.2d 415, 420 (Ind. Ct. App. 1981) (permitting ex parte action when a party "had fled the jurisdiction and was concealing her whereabouts"). Thus, the State's arguments on appeal that it was not required to give Adams notice of its motion to transfer are not well taken.

But not all errors are reversible errors. It is well-established that an error based on a lack of notice is subject to the harmless error doctrine, which requires the appellant to demonstrate prejudice as a result of the lack of notice.[3] See, e.g., TeWalt, 421 N.E.2d at 420. Here, Adams contends that he has been prejudiced by the transfer order because the underlying search had no "nexus between [the cash] and the . . . offense." Appellant's Br. at 3. We cannot agree.

Adams' argument that the transfer is unlawful because there is no "nexus" between the property and the offense misstates the test set forth in Membres. Again, according to our supreme court, we need only consider the lawfulness of the search itself, and that question, in turn, requires an assessment of the probable cause for the search. See U.S. Const. amend. IV; Ind. Const. Art. I, Sec. 11; see, e.g., Daugherty v. State, 957 N.E.2d 676, 680-81 (Ind. Ct. App. 2011).

---

[3] Adams also claims that he was denied procedural due process under the state and federal constitutions. "It is commonly understood that procedural due process includes notice and an opportunity to be heard." Jones v. Hous. Auth. of City of S. Bend, 915 N.E.2d 490, 497 (Ind. Ct. App. 2009), trans. denied. Any constitutional error in the lack of notice was cured by the trial court's consideration of Adams' motion to set aside the transfer order and this court's consideration of his claims on the merits. See id. ("Jones has been provided a full opportunity to present his defenses . . . , first through the trial court, and now before us on appeal. Therefore, . . . Jones has failed to demonstrate how he was prejudiced by the procedural due process error.").

Here, there is no serious question that the facts underlying the search of Adams' car and the seizure of his cash were supported by probable cause and were, therefore, lawful. Indeed, this otherwise centerpiece argument seems so indisputable that Adams' attorneys instead focus their appellate arguments on the fact that "Indiana's forfeiture statute requires the State to demonstrate a nexus between the property sought by the State in the forfeiture and the underlying drug offense." Appellant's Br. at 3. That is all well and good, see, e.g., Serrano v. State, 946 N.E.2d 1139, 1143 (Ind. 2011), but, as the State correctly notes in its brief, this case does not involve Indiana's forfeiture statutes. It involves the turnover statute and, as described in Membres, that statute requires consideration only of the lawfulness of the seizure. The lawfulness of a seizure, in turn, is dependent on probable cause, which is not disputed in this appeal. Accordingly, Adams cannot demonstrate that he was prejudiced by the trial court's transfer order, and we affirm that order.

Affirmed.

RILEY, J., and DARDEN, J., concur.