In the Matter of the Termination of the Parent–Child Relationship of Monica Sue ROBINSON, Catina Marie Robinson, and Amber Lynn Robinson, Children, and Diana Sue Robinson and Nelson Eddie Robinson, Parents.

Nelson Eddie ROBINSON, Appellant (Respondent below),

v.

MADISON COUNTY DEPARTMENT OF PUBLIC WELFARE, Appellee (Petitioner below).

No. 48S02–8905–JV–415.

Supreme Court of Indiana.

May 23, 1989.

Steven C. Smith, Pauper Counsel, Anderson, for appellant.

Thomas L. Hulse, Atty. for the Madison County Dept. of Public Welfare, James D. Gillispie, Court Appointed Guardian Ad Litem, Anderson, for appellee.

PIVARNIK, Judge.

This cause comes to us on a petition to transfer from the Second District Court of Appeals. Nelson Eddie Robinson appealed a judgment terminating his parental rights in his three children, Monica Sue, born May 15, 1971, Catina Marie, born November 2, 1972, and Amber Lynn, born December 1, 1974. The action was brought before the Juvenile Court of Madison County, by the Madison County Department of Public Welfare petitioning to terminate the parental rights of Nelson Eddie Robinson. The action was filed on November 13, 1985, the initial hearing was held on January 9, 1986, and the fact-finding hearings were held on November 19 and 25, 1986, when the evidence was concluded and the matter taken under advisement. On January 13, 1987, the court entered its decree terminating the father's parental rights.

In a termination of parent-child relationship involving either a delinquent child or a child in need of services, the welfare department must allege and prove four essential elements: one, the child has been removed from the parent for at least six months under a dispositional decree; two, there is a reasonable probability that the conditions which resulted in the child's removal will not be remedied; three, termination is in the best interests of the child;

and four, the county department has a satisfactory plan for the care and treatment of the child. Ind.Code § 31–6–5–4(c). Petitioner Robinson claimed before the court of appeals and on transfer to this Court that at the time the trial court entered the termination judgment there was insufficient showing the children had been removed from the custody of the parent for at least six months under a dispositional order or decree. The court of appeals looked to the judgment of the dispositional hearing in the child in need of services (CHINS) case held on July 26, 1983, and held that the judgment did not sufficiently show removal of custody from Petitioner Robinson. We disagree, and accordingly grant transfer and vacate the opinion of the court of appeals. We also decide a second issue raised by Robinson concerning whether the judgment of the trial court was erroneous because the evidence failed to establish a reasonable probability that the conditions resulting in the removal of his children would not be remedied.

The Welfare Department correctly points out the well-established rule that to ascertain the meaning or effect of the dispositional decree it is necessary to consider the whole record. *Town of Flora v. Indiana Service Corporation* (1944), 222 Ind. 253, 258, 53 N.E.2d 161, 163; *State ex rel. Booth v. Beck Jewelry Enterprises, Inc.* (1942), 220 Ind. 276, 279, 41 N.E.2d 622, 623; *Indiana & Michigan Electric Co. v. Harlan* (1987), Ind.App., 504 N.E.2d 301, 308. That is certainly true here when we consider the very nature of proceedings involving the care, attention, and protection of neglected, abused, and dependent children, or "children in need of services" (CHINS, Ind.Code § 31–6–4–13.5). The intervention of the juvenile court and all of the allied agencies of the county such as the prosecuting attorney, the probation office in the case of juveniles, and the welfare department in the case of children in need of services, ordinarily begins as an emergency situation requiring immediate action and continues for varying lengths of time depending upon the facts of the situation requiring care, protection, attempts at rehabilitation of the child or children,

and/or the parents and the entire home environment. Here, we are concerned with children in need of services, and not juvenile delinquency. During these proceedings many steps need to be taken and decisions made to resolve the plight of these children. The desired result would be to resolve the problems in the home which led to the children's distress and return them there. If this cannot be done, the alternative which serves the best interests of the child or children is terminating parental rights and placing the children where they will receive proper care and protection. Title 31 of our Indiana Code sets out a statutory scheme for the manner in which a juvenile court will operate in these types of cases. We are particularly concerned here with Title 31, Art. 6, Ch. 4.

The Madison County Welfare Department had some involvement with the Robinson children for eleven years, beginning in or about 1976. They had been removed from the Robinson home in the late 1970's and returned. They were again removed in 1981 when a CHINS action was filed pursuant to Ind.Code § 31–6–4–13.5. The necessity for the action was that the children's mother was neglecting the children and the father, Petitioner Nelson Eddie Robinson, was charged with physically abusing them. He was criminally charged in 1982 with the physical abuse of Monica and Catina. The causes filed were Class D felonies. The children were removed from their father on October 16, 1981, and have never been in his custody since that time. Robinson subsequently was convicted in both of the abuse cases and served time in prison from September 7, 1982, to May 21, 1983. The juvenile court held a fact-finding hearing in the CHINS action and entered a CHINS order in July of 1982. The mother attended these hearings but Petitioner Robinson did not. The testimony revealed that Robinson was changing his residence from time to time and the Welfare Department was unable to locate him. Further, of course, he was in prison until 1983 and therefore unable to contribute in any way to the care of his children. In the CHINS Order of 1982, the court made the children wards of

the Welfare Department and in further-ance of its responsibility, the Welfare Department placed the children in foster care. The court also ordered a program of participation for the parents in the care, treatment or rehabilitation of the children pursuant to Ind.Code §§ 31–6–4–15.8, 31–6–4–17 to 31–6–4–19. The court was unable to hold a dispositional hearing with regard to Petitioner Robinson pursuant to sections 17 through 19 because it was impossible to make any disposition as to him due to his incarceration. In the meantime, the participation program proceeded with the mother and the foster care of the children continued under the direction and wardship of the Welfare Department.

The first opportunity for a dispositional hearing with regard to Petitioner Robinson was on July 26, 1983. Although the terminology "dispositional decree or hearing" as used throughout these statutes connotes a final disposition of the cause, this is not the nature of the hearing and ultimate order or decree. This is one of many steps in the continuing procedural scheme for the care and protection of the children with the ultimate result of either returning them to their home or terminating the parental rights. The dispositional hearing contemplated in sections 17 through 19 is for the purpose of setting a program to be pursued that will ultimately result in a final disposition of the cause. The express purpose of the hearing in July of 1983 was to set up such a program for Robinson. The attorneys for the Welfare Department informed the court they were present to make a status report pursuant to section 19 and to establish a participation program for the father. It was clearly established at that hearing that the children were wards of the Welfare Department in foster home care, that they were to remain so, and that the father was to be advised of the participation program already established in 1982 and given an opportunity to take part in it. That program required the father to visit his children, participate in counseling, establish himself in regular employment and pay a small amount of support money for the care of his children. The Welfare Department further stated that, as part of

their program, if Robinson did not participate and rehabilitate himself they would subsequently move to terminate his parental rights. The judge explained to Robinson the provisions of the program, the dispositional order the court was about to enter, and asked him if he understood his obligations. Robinson stated he understood them and intended to take part in the program. Pursuant to the statutory scheme of Art. 6, the court advised Robinson that if he did not comply with these provisions, his parental rights could be permanently removed.

■ It would be unrealistic to say the children were not removed from the father's custody by a dispositional hearing or decree merely because the court did not expressly say in this order he was removing the children from the father's custody. The children were already removed from his custody for two years so the use of that exact language was not necessary. Further, the very nature of the hearing and the order was that the children were to remain out of their father's custody in the arrangements above described with a program designed to enable the father to show he was willing and able to reassume the role of parent to the children.

The trial court properly found in the termination of parental rights action that the children had been removed from their father's custody for a period of at least six months under a dispositional decree pursuant to Ind.Code § 31–6–5–4. The father was present at the dispositional hearing in July of 1983 wherein the court acknowledged and found that the children were legally in the Welfare Department's custody and would remain so with the program we have outlined above.

■ There is no merit to Robinson's second contention that the evidence failed to clearly and convincingly establish a reasonable probability the conditions resulting in the removal of the children will not be remedied. The evidence showed that from the time the children were removed from their father's custody in October of 1981 he had visited them one time. He was convict-

ed of physically abusing the two older girls and they feared him to such an extent that the foster parents and welfare workers described it as "absolute terror." None of the children wished to visit him as he was disruptive to them and they feared him. He wholly failed to comply with any of the provisions of the dispositional order of 1983. He did not comply with one of the conditions, even to the extent of attempting to visit one of his children. Monica was so disturbed she has spent a number of years in an institution specializing in the care of severely emotionally disturbed children who have been sexually abused. She was still in the care of that institution at the time of the termination hearing. Psychiatric experts considered her recovery to be questionable. In the meantime, Robinson was under psychiatric care for which he was hospitalized from February 20, 1986 to April 3, 1986. His psychiatrist felt his inability or unwillingness to take responsibility for himself would prevent him from being capable for minor children. He was placed in a partial hospitalization program after his release from the hospital on April 3, 1986, which required him to stay at a residential house. He came home to the residential house on two occasions in an intoxicated condition. He was abusive to the other residents, undermined the staff who tried to give support to the other patients and was expelled from the residential unit for a five day period. He was asked to return after that time but did not. The evidence showed Robinson not only failed to make any effort to reestablish himself with his children but resisted all efforts by the Welfare Department to help him in this quest. The trial court was justified in finding the evidence clearly and convincingly established there is a reasonable probability conditions resulting in the removal of the children from the father will not be remedied.

The judgment of the trial court is affirmed.

SHEPARD, C.J., and GIVAN, J., concur.

DICKSON, J., dissents with separate opinion in which DeBRULER, J., concurs.

DICKSON, Judge, dissenting.

While I share the majority's concern for the welfare of the Robinson children, I cannot agree that the evidence is sufficient to justify the permanent severance of their relationship with their father. I am unable to join in the majority opinion, because I believe that it fails to sufficiently differentiate proceedings when a child is in need of services (CHINS) Ind.Code § 31–6–4–10 *et seq.*, a temporary emergency protective measure, from procedures which result in the termination of parental rights, Ind. Code § 31–6–5–4 *et seq.*

The prerequisite statutory elements in such a proceeding to terminate the parent-child relationship are:

(1) the child has been removed from the parent for at least six (6) months under a dispositional decree;

*(2) there is a reasonable probability that the conditions that resulted in the child's removal will not be remedied;*

(3) termination is in the best interests of the child; and

(4) the county department has a satisfactory plan for the care and treatment of the child.

(emphasis supplied) Ind.Code § 31–6–5–4 (West Supp.1988). The unique and monumental nature of this optional recourse is appropriately recognized by the commentary accompanying this statute:

Involuntary termination of parental rights is the most severe action a juvenile court can take; section 5 of this chapter [I.C. 31–6–5–5] underscores that termination severs *all* rights of a parent to his child. Termination is therefore designated to be a last resort, available only when all other reasonable efforts have failed. This policy is a recognition of the constitutional rights of parents to the custody of their children, and the state's authority to interfere with that right only in certain limited circumstances.

Ind.Code § 31–6–5–4, unofficial commentary at 216–17 (West 1980).

The termination of the parent-child relationship should therefore scrupulously require sufficient proof for each of the elements before imposition of this ultimate sanction to the parental relationship, including proof that the conditions that resulted in the child's removal will not be remedied. Sufficient evidence should be required to specifically identify the conditions which resulted in the original CHINS removal and to demonstrate that there is a reasonable probability that such conditions will not be remedied.

Concerns regarding the present best interests of the child or judicial expediency are wholly unacceptable to obviate the necessity of such proof and to justify irrevocable termination of the parent-child relationship. The denial of a petition to terminate parental rights does not create any risk or danger to the children involved. They remain under the protection of the prior CHINS order.

Because of these concerns, I respectfully dissent from the majority.

DeBRULER, J., concurs.