962 N.E.2d 70 (2011)
In re the Termination of the Parent-Child Relationship of D.D., J.J., and K.J.
E.J., Appellant,
v.
The Indiana Department of Child Services, Appellee.
No. 10A04-1011-JT-748.
Court of Appeals of Indiana.
August 29, 2011.
*71 Mitchele J. Harlan, Jeffersonville, IN, Attorney for Appellant.
Jennifer L. Harmeyer, Indiana Department of Child Services, Jeffersonville, IN, Robert J. Henke, DCS Central Administration, Indianapolis, IN, Attorneys for Appellee.

OPINION
FRIEDLANDER, Judge.
E.J. (Mother) appeals the involuntary termination of her parental rights to her children, D.D., J.J., and K.J. In so doing, Mother claims, among other things, that the Indiana Department of Child Services failed to establish the children had been removed from her care pursuant to a dispositional decree for at least six months prior to the filing of the involuntary termination petition, as is required by Ind.Code Ann. § 31-35-2-4(b)(2)(A) (West, Westlaw through 2011 Pub. Laws approved & effective through 6/28/2011).
We reverse.
Mother is the biological mother of D.D., born in July 1997, J.J., born in April 2000, and K.J., born in February 2004.[1] The facts most favorable to the trial court's judgment reveal that the local Clark County Office of the Indiana Department of Child Services (CCDCS) first became involved with Mother and her family in December 2005. A Program of Informal *72 Adjustment[2] was signed by Mother in January 2006 after Mother whipped J.J. with a belt, leaving a bruise on the child's leg. Family preservation services were initiated, but for the next several months CCDCS continued to receive and substantiate reports of lack of supervision, educational neglect, and life and health endangerment neglect pertaining to D.D. and J.J. As a result, additional services were requested, including a psychological evaluation and individual counseling for Mother.
In August 2006, the children were detained after CCDCS substantiated a report of physical abuse committed by either Mother or Mother's sister, Keisha, when belt marks were observed on J.J.'s face, back, and arms. During a hearing in September 2006, Mother admitted that D.D., J.J., and K.J. were all children in need of services (CHINS). The trial court thereafter issued orders, under separate cause numbers, adjudicating all three children CHINS and making them wards of CCDCS. The court's CHINS orders, however, allowed the children to return to Mother's physical care so long as Mother abided by her agreement to follow all psychiatric recommendations, including taking all prescribed medications, participating in individual and family counsel, refraining from using any type of physical discipline with the children, and not allowing the children to have any contact with Keisha.
In November 2006, CCDCS received a report that Mother had been allowing contact between Keisha and the children and had also permitted at least two unknown male individuals to spend the night in the family home in direct violation of a safety plan that had recently been put into place to address this very issue. In addition, Mother had not seen her therapist in over one month, had been having increasing problems with not getting J.J. to school on time, and D.D. had recently been admitted to Valley Vista Hospital expressing suicidal ideation with a well developed plan while in Mother's care. During a home visit later the same month, the CCDCS case manager observed that the family home was dirty and disorganized, there was old and dried food on the floors, the children's bedrooms were "trashed," and a substance appearing to be marijuana was seen on top of a soft drink can along with a cigarette rolling paper. Exhibits Volume I, Petitioner's Exhibit 3 at 2. The case manager further observed that J.J. began "cowering and hiding" from Mother when she woke up and "was obviously afraid," but would not tell the case manager why he was so scared. Id. Based on the case manager's observations, in addition to CCDCS's growing concern regarding the children's safety in the home, D.D.'s deteriorated mental status, Mother's failure to participate in therapy, the ongoing contact between Keisha and the children, and the number of unknown people who were "in and out of the home," CCDCS requested, and the trial court granted, an Emergency Custody Order allowing CCDCS to take the children into emergency protective custody. Id. Although a detention hearing was held in December 2006 and the children were never again returned to Mother's care, the trial court's Dispositional Order formally removing the children from Mother's care and custody was not entered until April 15, 2010.
Meanwhile, following the children's detention in November 2006, Mother was *73 offered a wealth of services designed to help improve her ability to care for the children. Mother refused, however, to consistently participate in and/or successfully complete a majority of the court-ordered reunification services and was never able to demonstrate that she could provide the children with a safe and stable home environment. On April 19, 2010,[3] CCDCS filed its "Petition For Involuntary Termination Of The Parent-Child Relationship" under all three cause numbers seeking the involuntary termination of Mother's parental rights to D.D., J.J., and K.J.
A consolidated, two-day evidentiary hearing on the termination petitions as to all three children commenced in July 2010 and concluded in August 2010. At the time of the termination hearing, although the children had been wards of CCDCS for approximately forty-four months, they had been removed from Mother's care pursuant to a Dispositional Order only since April 15, 2010. In addition, the termination petitions, which alleged that the children had been removed from Mother's care for at least six months pursuant to a dispositional order, were filed on April 19, 2010, just days after the trial court entered its Dispositional Order[s] in the underlying CHINS cases. At the close of evidence, the trial court took the matter under advisement. In October 2010, the court issued its judgment terminating Mother's parental rights to D.D., J.J., and K.J.
Mother now appeals.
Before parental rights may be involuntarily terminated, the State must allege and prove, by clear and convincing evidence, each element contained in I.C. § 31-35-2-4(b). In re G.Y., 904 N.E.2d 1257, 1260-61 (Ind.2009); see also Ind. Code Ann. § 31-37-14-2 (West, Westlaw through 2011 Pub. Laws approved & effective through 6/28/2011). Subsection (b)(2)(A) of Indiana's termination statute provides that an involuntary termination petition "must allege" that one of the following is true:
(i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
(ii) A court has entered a finding under IC XX-XX-XX-X.6 that reasonable efforts for family preservation or reunification are not required. . . .
(iii) The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child[.]
I.C. § 31-35-2-4(b)(2)(A). Because parents have a constitutionally protected right to establish a home and raise their children, see e.g. M.L.B. v. S.L.J., 519 U.S. 102, 116, 117 S.Ct. 555, 564, 136 L.Ed.2d 473 (1996), the Indiana Department of Child Services "must strictly comply with the statute terminating parental rights," Platz v. Elkhart Cnty. Dep't of Pub. Welfare, 631 N.E.2d 16, 18 (Ind.Ct.App.1994); see also In re J.S., 906 N.E.2d 226 (Ind.Ct. App.2009). Consequently, if the trial court *74 "does not find that the allegations in the [termination] petition are true, the court shall dismiss the petition." Ind.Code § 31-35-2-8(b) (emphasis supplied); see also In re G.Y., 904 N.E.2d 1257 (holding that if the State fails to prove any of the statutory elements in I.C. § 31-35-2-4(b)(2), then it is not entitled to a judgment terminating parental rights). There was no such compliance in this case.
A careful review of the record reveals that in its "Petition[s] For Involuntary Termination Of The Parent-Child Relationship" filed in each CHINS case below, CCDCS alleged as follows: "The above-named child has been removed from the home and custody of [his/her] mother for more than six months pursuant to the terms of the Dispositional Decree entered by the Court in the Child in Need of Services' action." Appellant's Appendix, Volume V at 1. Contrary to what is oftentimes common practice, however, CCDCS did not allege in its termination petitions that any of the alternative elements listed in subsection (b)(2)(A), such as the children had been removed from Mother's care for at least fifteen of the most recent twenty-two months, had also been satisfied. Moreover, in its judgments terminating Mother's parental rights to all three children, the trial court made the following findings of fact:

I. THAT THE CHILD HAS BEEN REMOVED FROM THE PARENTS FOR AT LEAST SIX (6) MONTHS UNDER A DISPOSITIONAL DECREE.
* * *
4. That on or about the 19th day of September 2006, the child was found to be a child in need of services as defined by the Indiana Juvenile Code.
5. That on or about the 19th day of September 2006, the child was made a ward of the Clark County Department of Child Services through[ ] the Clark Superior Court No. 1.
6. That on or about the 11th day of March 2010, a Dispositional Decree was entered by this Court in which the child was made a CHINS pursuant to a Dispositional Decree entered by this Court.
7. That the child, had been out of the care, custody, and control of the Respondent-Mother since March 11, 2010, under a Dispositional Order.
Appellee's Appendix at 1-2. Based on the foregoing, it is clear that CCDCS failed to follow the dictates of I.C. § 31-35-2-4(b)(2)(A). The statutory mandate when seeking the involuntary termination of a parent-child relationship is "clear and unequivocal." Platz v. Elkhart Cnty. Dep't of Pub. Welfare, 631 N.E.2d at 18. An involuntary termination petition must allege, and the State must prove by clear and convincing evidence, that the child was removed from the parent for at least six months under a dispositional decree at the time the involuntary termination petition was filed. Platz v. Elkhart Cnty. Dep't of Pub. Welfare, 631 N.E.2d 16.; see also I.C. § 31-35-2-4(b)(2)(A). Thus, it is clear from the face of the documents cited above that the involuntary termination petitions filed in the underlying CHINS cases were fatally flawed.[4]
*75 In an attempt to avoid its evidentiary burden to prove that the averments contained in its involuntary termination petitions were true at the time the petitions were filed, CCDCS directs our attention to the trial court's "order requiring Mother to take parenting classes with New Hope Services," entered in December 2006 following the children's final removal from her care, in addition to the "numerous" subsequent orders "which everyone apparently considered [to be] modifications of the dispositional order." Appellee's Brief at 21. CCDCS then asserts that although these orders did not "contain[ ] the name `dispositional decree[,]' [they were] dispositional in sum and substance," and thus CCDCS actually "did not file its termination petition until several years after the court's dispositional decree in this case." Id.
This Court has previously explained that "[f]or purposes of the element of the involuntary termination statute requiring a child to have been `removed from the parent for at least six months under a dispositional decree' before termination may occur, [see] I.C. § 31-35-2-4(b)(2)(A)(i), such a dispositional decree is one that authorizes an out-of-home placement." A.P. v. Porter Cnty. Office of Family & Children, 734 N.E.2d 1107, 1116 (Ind.Ct.App.2000) (quoting Tipton v. Marion Cnty. Dep't of Pub. Welfare, 629 N.E.2d 1262, 1265-66 (Ind.Ct.App.1994)), trans. denied. We have held this to be true even in instances where the child's removal occurs while the non-custodial parent is incarcerated and prior to the establishment of paternity. See, e.g., Wagner v. Grant Cnty. Dep't of Pub. Welfare, 653 N.E.2d 531, 533 (Ind.Ct.App.1995) (concluding child was "effectively removed" from father for purposes of termination statute where father was incarcerated at time child removed from mother pursuant to dispositional); In re A.C.B. v. Marion Cnty. Dep't of Pub. Welfare, 598 N.E.2d 570, 572 (Ind.Ct.App.1992) (concluding involuntary termination statutes do not require an adjudication of paternity prior to termination). Our Supreme Court has likewise explained that in certain circumstances, it would be "unrealistic" to say a child was not removed from the parent by a dispositional hearing or decree merely because the court did not expressly say so in its dispositional order. In re Robinson v. Madison Cnty. Dep't of Pub. Welfare, 538 N.E.2d 1385, 1387 (Ind.1989). In examining the removal element under the particular facts and circumstances in the present case, however, such an inference may not be reasonably made in light of the trial court's clear and unequivocal finding that the children were not removed from Mother's care pursuant to a dispositional order until March 2010. Thus, CCDCS failed to satisfy the six-month statutory mandate of I.C. § 31-35-2-4(b)(2)(A), and the trial court committed reversible error in granting CCDCS's involuntary termination petitions.
We also reject CCDCS's additional assertion that this issue is waived simply because no objection was raised below. Failure to ensure that the State has fully complied with all of the conditions precedent to the termination of parental rights "constitutes fundamental error." In re L.B., S.B, and S.C., 616 N.E.2d 406, 407 (Ind.Ct.App.1993), trans. denied. Such is the case here. Our conclusion, however, should in no way be construed as a comment upon the sufficiency of the evidence *76 relating to the remaining elements of the termination petition.
In reaching our decision today, this Court is keenly aware of the fact that the safety and well-being of all three children hangs in the balance, and further delay in the final resolution of the children's respective cases is certainly regrettable. Nevertheless, CCDCS alleged, but failed to prove removal according to the mandates of Indiana Code Section I.C. § 31-35-2-4(b)(2)(A). Accordingly, the trial court's judgment terminating Mother's parental rights to all three children must be reversed, and this case remanded for further proceedings consistent with this opinion.
Judgment reversed and remanded.
DARDEN, J., and VAIDIK, J., concur.
NOTES
[1] Paternity was not established for any of the children, and there was never any contact information available for T.D., Q.T., and A.S., the alleged biological fathers of D.D., J.J., and K.J., respectively. In addition, none of the alleged biological fathers participated in the underlying CHINS or termination proceedings, their parental rights were involuntarily terminated by the trial court in its October 2010 termination order, and none of the alleged fathers participate in this appeal. Consequently, we limit our recitation of the facts to those pertinent solely to Mother's appeal.
[2] A Program of Informal Adjustment is a negotiated agreement between a family and the Indiana Department of Child Services whereby the family agrees to participate in various services in an effort to prevent the child/children from being formally deemed children in need of services. See Ind.Code Ann. § 31-34-8, et seq. (West, Westlaw through 2011 Pub. Laws approved & effective through 6/28/2011).
[3] We note that there are indirect references made in the record suggesting that CCDCS may have filed a petition seeking the involuntary termination of Mother's parental rights to the children sometime in February 2008, which was later dismissed. The record does not contain a copy of any such prior petition, if indeed one exists. Moreover, CCDCS failed to include a copy of the CHINS chronological case summary (CCS), thereby greatly impeding our efficient and thorough review of this matter.
[4] We observe that although the trial court's judgment indicates that the children were removed from Mother's care pursuant to a dispositional order entered on March 11, 2010, the Dispositional Order itself indicates that the hearing was held on March 15, 2010. In addition, the Dispositional Order was not signed, and thus did not take effect, until April 15, 2010. Notwithstanding these discrepancies, it remains clear that the State failed to establish that the children were removed from Mother for at least six months under a dispositional decree when it filed its involuntary termination petitions on April 19, 2010.