Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 30 2013, 9:15 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CAROLYN J. NICHOLS**
Noblesville, Indiana

ATTORNEYS FOR APPELLEE:

**MICHAEL C. PRICE**
Indiana Department of Child Services
Noblesville, Indiana

**ROBERT J. HENKE**
Indiana Department of Child Services
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF A.S.: | ) ) ) ) | |
| K.S., | ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No. 29A02-1210-JT-824 |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) | |
| Appellee-Petitioner. | ) ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable Steven R. Nation, Judge
Cause No. 29D01-1202-JT-200

**April 30, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

K.S. ("Mother") appeals the trial court's termination of her parental rights over her minor child A.S. ("the child") on the petition of the Indiana Department of Child Services ("the DCS"). Mother raises the following dispositive issues for our review:

1. Whether the DCS's petition to terminate her parental rights is deficient;

2. Whether the trial court's conclusion that continuation of the parent-child relationship poses a threat to the child is clearly erroneous;

3. Whether the trial court's conclusion that termination of Mother's parental rights over the child is in the child's best interests is clearly erroneous; and

4. Whether the trial court's conclusion that the DCS has a satisfactory plan for the care and treatment of the child is clearly erroneous.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On June 3, 2009, Mother's parental rights over three minor children were terminated based on her repeated substance abuse issues, criminal behavior, including neglect of her dependents, and incarceration. In June of 2011, Mother gave birth to the child in the instant matter. The DCS immediately initiated contact with Mother.

On August 29, 2011, Mother and the DCS agreed to an Informal Adjustment ("IA") to address Mother's substance abuse, transiency, and instability in order to avoid the filing of a petition to have the child declared a child in need of services ("CHINS"). However, Mother failed a drug test later that day for using heroin, and she failed to attend a scheduled therapy appointment a few days later. On September 2, DCS case workers

2

made an unannounced visit to Mother's home. Mother admitted she had marijuana in her home, and the DCS removed the child.

On September 7, the DCS filed its petition to have the child declared a CHINS and to dismiss the IA. Before the ensuing fact-finding hearing, Mother tested positive for use of cocaine, and she was sentenced to a term of six years, with three years executed, in the Indiana Department of Correction for Class C felony forgery. On December 2, the trial court found the child to be a CHINS.

On December 7, the DCS filed a request for a hearing to prove that an exception existed under Indiana law that allowed the DCS to ignore the usual requirement that it provide reasonable efforts to reunify Mother and the child. The court held a hearing on the DCS's request on February 10, which Mother attended by telephone and was represented by counsel. Immediately following that hearing, the court concluded that the DCS had met its burden to show that an exception to the usual requirement existed on these facts.

Five days later, on February 15, the DCS filed its petition to terminate Mother's parental rights over the child. In its petition, the DCS alleged, among other things, that "[a] court has entered a finding under In[d]. Code 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required." Appellee's App. at 1. The court held a fact-finding hearing on the DCS's petition on August 3.

On September 21, 2012, the court entered its order terminating Mother's parental rights over the child. In relevant part, the court found as follows:

> 14) The Court finds that any period of sobriety has occurred only while it has been enforced and imposed by the prison facility where [Mother] has

3

been housed since her sentencing in November of 2011. [Mother] has not been able to maintain an extended period of sobriety while outside of a penal facility since before the initiation of the underlying CHINS cause of action for this child, including the time periods covered by the CHINS and termination proceedings for this child's three siblings. . . .

15)    [Mother] has an extensive criminal history, including the following:
- Convicted of Theft in 2007;
- Convicted of Neglect of a Dependent in 2008;
- Incarcerated in Marion County for violation of probation between 2/23/09 and 3/6/09, based upon failing to appear for required drug screens;
- Incarcerated in Marion County for violation of probation between 4/17/09 and at least 5/4/09, for again failing to comply with drug screening requirements;
- Incarceration from 11/21/11 through the date of the termination trial;
- Arrest and incarceration in September of 2011 due to the events of 9/2/11 leading to the filing of the CHINS petition.

16)    [Mother] has engaged in a pattern of drug use and criminal conduct extending from at least 2007 to the present. [Mother] has been placed on probation and required to comply with drug treatment and cessation programs as part of her probation requirements. [Mother] has failed to comply with those requirements, leading to repeated incarceration[s] . . . .

\* \* \*

19)    [Mother's] pattern of failed reunification efforts, inevitably followed by a return to substance abuse and criminal activity, similarly leading to incarceration and enforced separation from her biological child, is damaging to the best interests and lives [sic] of the child. No level of services has prevented [Mother] from continuing this pattern and jeopardizing the future prospects of the child.

20)    [Mother's] series of criminal acts, arrest and incarceration, participation in reunification services, and subsequent relapses, demonstrate[] that the conditions that resulted in the child's removal or the reasons for placement outside the home will not be remedied. This pattern also demonstrates that continuation of the parent-child relationship poses a threat to the child's well-being.

\* \* \*

22) The child's DCS case manager and Guardian Ad Litem testified that termination of the parent-child relationship and adoption of the child are in the child's best interests. The Court now accepts and adopts these opinions as its own findings of fact in these proceedings.

Appellant's App. at 17-18. This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

We begin our review by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." Bailey v. Tippecanoe Div. of Family & Children (In re M.B.), 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), trans. denied. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. Schultz v. Porter Cnty. Office of Family & Children (In re K.S.), 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened. Id. Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. Id. at 836.

Before an involuntary termination of parental rights can occur in Indiana, the DCS is required to allege and prove, among other things:

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

5

> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

* * *

> (C) [and] that termination is in the best interests of the child . . . .

Ind. Code § 31-35-2-4(b)(2).[1] That statute provides that the DCS need establish only one of the requirements of subsection (b)(2)(B) before the trial court may terminate parental rights. The DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.), 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2). Moreover, the DCS "must strictly comply with the statute terminating parental rights." Platz v. Elkhart Cnty. Dep't of Pub. Welfare, 631 N.E.2d 16, 18 (Ind. Ct. App. 1994).

When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. Peterson v. Marion Cnty. Office of Family & Children, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), trans. denied. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. Id. Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. Judy S. v. Noble Cnty. Office of Family & Children (In re L.S.), 717 N.E.2d 204, 208 (Ind. Ct. App. 1999). trans. denied.

---

[1] Indiana Code Section 31-35-2-4(b)(2)(B) also allows the DCS to allege that "[t]he child has, on two (2) separate occasions, been adjudicated a child in need of services." But that additional, alternative provision is not relevant here.

6

Here, in terminating Mother's parental rights, the trial court entered specific findings of fact and conclusions thereon. When a trial court's judgment contains special findings and conclusions, we apply a two-tiered standard of review. Bester v. Lake Cnty. Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings and, second, we determine whether the findings support the judgment. Id. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." Quillen v. Quillen, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. In re L.S., 717 N.E.2d at 208.

Mother first asserts that the DCS's petition for termination of her parental rights was procedurally deficient. Mother also challenges the court's findings and conclusions that termination of her parental rights is justified because a continuation of the parent-child relationships poses a threat to the child's well-being[2] and that the termination of her parental rights is in the child's best interests. And Mother asserts that the DCS lacks a satisfactory plan for the care and treatment of the child. We address each argument in turn.

---

[2] Mother also asserts that the DCS's evidence fails to show that she will not remedy the conditions that resulted in the child's removal, but we need not consider that argument given the disjunctive nature of Indiana Code Section 31-35-2-4(b)(2)(B) and our holding that the trial court's conclusion is justified under on subsection (b)(2)(B)(ii).

## Issue One:  Whether the DCS's Petition for
## Termination was Procedurally Deficient

Mother first contends that the DCS's petition to terminate her parental rights was procedurally deficient.[3]  Indiana Code Section 31-35-2-4(b)(2)(A) requires the DCS's petition to terminate parental rights to allege that one of the following three circumstances is true:

> (i)  The child has been removed from the parent for at least six (6) months under a dispositional decree.
>
> (ii)  A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
>
> (iii)  The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child . . . .

In relevant part,[4] the DCS's petition to terminate Mother's parental rights alleged that "[a] court has entered a finding under In[d]. Code 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required."  Appellee's App. at 1.

---

[3]  Although Mother did not object to this issue to the trial court, we have recognized that the "[f]ailure to ensure that the State has fully complied with all the conditions precedent to the termination of parental rights constitutes fundamental error." E.J. v. Ind. Dep't of Child Servs. (In re D.D.), 962 N.E.2d 70, 75 (Ind. Ct. App. 2011) (discussing  Indiana Code Section 31-35-2-4(b)(2)(A)) (quotation omitted). The DCS does not suggest in its appellee's brief that Mother's argument is not available for appellate review.

[4]  Although the DCS's petition to terminate Mother's parental rights alleged each of the three subdivisions of Indiana Code Section 31-35-2-4(b)(2)(A) were true, on appeal the DCS only defends its petition under subdivision (ii).  We restrict our review accordingly.

8

In her initial brief on this issue, Mother relied substantially on the DCS's petition to terminate the parental rights of the child's biological father. In her reply brief, Mother acknowledges her error. Nonetheless, Mother continues:

> [The DCS] failed to properly plead early TPR eligibility under I.C. § 31-35-2-4(b)(2)(A)(ii) (2012). Looking at Mother's TPR petition, we see that the section relevant to I.C. § 31-35-2-4(b)(2)(A)(ii) was not properly completed. The Petition lacks the dates of the court's ruling excusing further reunification efforts, as if [the DCS] never intended to rely upon this section. Since [the DCS] is not entitled to rely on [that section], the filing and hearing of the TPR Petition was not allowed to occur any earlier than six (6) months <u>after</u> the Child had been removed <u>under a dispositional order</u>.

Reply Br. at 2-3 (citation and italics omitted; emphasis original). That is, Mother contends that the DCS's petition to terminate her parental rights lacks "a description of the court's finding, the date of the finding, and the manner in which the finding was made." <u>See</u> I.C. § 31-35-2-4(b)(2)(A)(ii). As such, Mother contends that the DCS was not entitled to rely on subsection (b)(2)(A)(ii) and that the DCS failed to prove at the ensuing fact-finding hearing that another subdivision applied.

We acknowledge that Mother has identified a technical error with the DCS's petition to terminate her parental rights. "But not all errors are reversible errors." <u>Adams v. State</u>, 967 N.E.2d 568, 572 (Ind. Ct. App. 2012), <u>trans. denied</u>. Rather, "[i]t is a well known rule of appellate practice that one who seeks to disturb a judgment has the burden of showing an erroneous ruling and resultant prejudice." <u>TeWalt v. TeWalt</u>, 421 N.E.2d 415, 420 (Ind. Ct. App. 1981); <u>see also</u> Ind. Trial Rule 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

9

Mother cannot demonstrate that the DCS's failure to include "a description of the court's finding, the date of the finding, and the manner in which the finding was made" in its petition prejudiced Mother's substantial rights. See I.C. § 31-35-2-4(b)(2)(A)(ii). The purpose of that statutory requirement is to place a parent on notice of a prior judicial decision and to allow the parent the opportunity to consider that prior decision before the fact-finding hearing on the DCS's petition to terminate parental rights. Here, the court's prior judicial decision concluded that Indiana law allowed the DCS to ignore the usual requirement that it provide reasonable efforts to reunify Mother with the child. That decision occurred five days before the DCS filed its petition to terminate Mother's parental rights, and there were no other judicial events involving Mother's relationship with the child between that decision and the DCS's filing of the instant petition. Mother attended the prior hearing by telephone, and she was represented at that hearing by counsel. There is no question that Mother was aware of the prior judicial decision to which the DCS was referring when it filed its petition to terminate Mother's parental rights under Indiana Code Section 31-35-2-4(b)(2)(A)(ii).

Moreover, neither at the fact-finding hearing on the DCS's petition to terminate nor in this appeal has Mother challenged the merits of the DCS's allegation under Indiana Code Section 31-35-2-4(b)(2)(A)(ii). Rather, it is undisputed that the DCS presented sufficient evidence at the fact-finding hearing to support its allegation under subsection (b)(2)(A)(ii). Mother's only assertion is that the DCS's technical error in writing its

10

petition nullifies the entirety of the ensuing termination proceeding.[5]  We cannot agree.

The DCS's technical error did not prejudice Mother's substantial rights.

### Issue Two:  Whether Continuation of the Parent-Child Relationship Poses a Threat to the Child

We next consider Mother's assertion that continuation of the parent-child relationship does not pose a threat to the child.  A trial court need not wait until a child is irreversibly influenced by a deficient lifestyle such that his physical, mental, and social growth is permanently impaired before terminating the parent-child relationship. Shupperd v. Miami Cnty. Div. of Family & Children (In re E.S.), 762 N.E.2d 1287, 1290 (Ind. Ct. App. 2002).  When the evidence shows that the emotional and physical development of a child in need of services is threatened, termination of the parent-child relationship is appropriate.  Id.

In support of this conclusion, the trial court found, in particular, that "[Mother's] series of criminal acts, arrest and incarceration, participation in reunification services, and subsequent relapses, demonstrate[] that . . . continuation of the parent-child relationship poses a threat to the child's well-being."  Appellant's App. at 18.  On appeal, Mother asserts that the trial court's assessment is not supported by the testimony of the family case manager, the guardian ad litem, or the foster father.  But Mother ignores the fact that the DCS introduced, without objection, numerous records of her prior convictions and that the trial court took judicial notice of the CHINS proceeding involving the child as

---

[5]  Mother relies on case law that discusses subsection (i) of Indiana Code Section 31-35-2-4(b)(2)(A) and that reviews the evidence presented by DCS at the fact-finding hearing to support that subsection.  See Appellant's Br. at 20 (citing In re D.D., 962 N.E.2d at 74).  But her use of case law is premised on her conclusion that the DCS here cannot rely on subsection (ii).  Because we do not agree with that conclusion, we need not consider case law discussing subsection (i).

well as the CHINS and termination proceedings involving Mother's other children. Transcript at 20, 23. Mother's struggles with substance abuse and incarceration, and her failure to participate in services to remedy those issues, are well established in those records. Her arguments to the contrary here are merely requests for this court to reweigh the evidence, which we will not do.

Again, the trial court need not wait until a child is irreversibly influenced by a deficient lifestyle such that his physical, mental, and social growth is permanently impaired before terminating the parent-child relationship. In re E.S., 762 N.E.2d at 1290. Given Mother's repeated incidents of substance abuse and incarceration, and her repeated failure to participate in services to remedy those issues, Mother cannot show that she will be able to provide adequate care or permanency for the child in the future.

Mother has not demonstrated that the trial court's conclusion that continuation of the parent-child relationship poses a threat to the child's well-being is clearly erroneous. Accordingly, we agree with the trial court that the termination of Mother's parental rights over the child was appropriate under Indiana Code Section 31-35-2-4(b)(2)(B)(ii).

### Issue Three: Whether Termination is in the Child's Best Interests

Mother also argues that the DCS failed to show that termination of the parent-child relationship is in the child's best interests. In determining what is in the best interests of a child, the trial court is required to look beyond the factors identified by the DCS and to consider the totality of the evidence. Stewart v. Ind. Dep't of Child Servs. (In re J.S.), 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). We have previously held that the recommendations of the case manager and a court-appointed advocate to terminate

12

parental rights, in addition to evidence that the continuation of the parent-child relationship poses a threat to the child, may be sufficient to show by clear and convincing evidence that termination is in the child's best interests. M.M. v. Elkhart Office of Family & Children (In re M.M.), 733 N.E.2d 6, 13 (Ind. Ct. App. 2000).

Here, both the family case manager, Laney Elkins, and the child's guardian ad litem, Michael Brown, testified that they believed termination of the parent-child relationship to be in the child's best interests. See Transcript at 33, 54. In light of that testimony and the evidence described above in Issue Two, the trial court's conclusion that termination of Mother's parental rights is in the child's best interests is not clearly erroneous. See In re M.M., 733 N.E.2d at 13.

### Issue Four: Whether the DCS has a Satisfactory Plan for the Care and Treatment of the Child

Finally, Mother asserts that the DCS's plan for adoption of the child is not satisfactory and she is "ready, willing and able to provide the best care possible" for the child. Appellant's Br. at 34. In order for the trial court to terminate the parent-child relationship, the trial court must find that there is a satisfactory plan for the care and treatment of the child. I.C. § 31-35-2-4(b)(2)(D). "This plan need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated." Jones v. Gibson Cnty. Div. of Family & Children (In re B.D.J.), 728 N.E.2d 195, 204 (Ind. Ct. App. 2000).

Mother's argument on this issue is not clearly distinct from her previous three arguments. Rather, this argument seems to be contingent on this court agreeing with one of her prior assertions. Because we agree with the trial court's conclusion that

13

continuation of the parent-child relationship poses a threat to the child's well-being, we likewise disagree with Mother's further assertion that she is "ready, willing and able to provide the best care possible" for the child. See Appellant's Br. at 34. We further note that Mother does not challenge the DCS's adoption plan for the child. Accordingly, there is no error on this issue.

## Conclusion

In sum, the trial court's order terminating Mother's parental rights over the child is not clearly erroneous. The trial court concluded that continuing the parent-child relationship would pose a threat to the child and is not in the child's best interests. In addition, the trial court concluded that the DCS has a satisfactory plan for the care and treatment of the child, namely, adoption. The court's conclusions are supported by its findings and its findings are supported by the evidence. Accordingly, we affirm the trial court's termination of Mother's parental rights over the child.

Affirmed.

ROBB, C.J., and CRONE, J., concur.